## SARAH GREENWOOD et al. *v.* THE CITY OF NEW ORLEANS et al.

The family Bible being produced as evidence to show that a party to judicial proceedings was a a minor when they took place, it appeared that a blank had been left for the date of his birth, which was filled up *in pencil;* it also appeared that the Bible, instead of being kept as a record of events at the time of their occurrence, contained several entries made with the same pen and ink, and apparently at the same time. *Held:* That as the witnesses, after a lapse of fifty-one years, could not refer to any distinct positive fact occurring at the time, by which the date could be satisfactorily fixed, the testimony was not sufficient to set aside proceedings which had been acted upon and tacitly acquiesced in for nearly thirty years.

The father and mother, while their children are under their authority, may appear for them in court in any kind of c:vil suit in which they may be interested.

The interest of the parents does not conflict with that of their children, on account of the usufructuary interest the parents have in the property of their children.

When the proper parties are before the court for the rendition of a decree, the parties to it can only take advantage of any irregularities in it by an appeal or action of nullity prosecuted in due time.

A decree pronounced by a competent tribunal, with the proper parties before it, although rendered by consent, being followed by its immediate execution, is a judgment capable of acquiring the force of the thing adjudged, and will produce that effect if no appeal be taken from it, nor action of rescission or nullity instituted within the period allowed by law.

APPEAL from the Second District Court of New Orleans, *Morgan,* J.

L. *Janin* & *H. Griffon*, for plaintiffs. *C. Roselius, P. E. Bonford, G. Eustis* & *J. B. Eustis* and *J. J. Michel*, for defendants and appellants.

MERRICK, C. J. *Shepherd Brown*, who was a partner of *John McDonogh*, died in January, 1818, possessed of much real estate separate and in partnership with *McDonogh*. He left an olographic will, dated 8th November, 1815, which was admitted to probate in New Orleans on the 6th of February, 1818. He left several collateral relations to whom he bequeathed his estate.

Among others, he bequeathed to the heirs of his sister *Sarah*, wife of *William Eaty*, one part or one-eighth of his whole property, to be enjoyed by her during her natural life, as will appear from the following dispositions of the will :

"I will, that immediately after my death an inventory and estimate shall be made of all my property and effects in the State of Louisiana, by two or more persons whom my executors hereafter named shall appoint, the same to be done on oath, and such parts of my property as shall be thought by my executors necessary or beneficial to the succession to be sold, shall be disposed of; but as the interests of my friend and partner *John McDonogh* are generally the same, it is my desire that all sales of property in which he is concerned shall be made after taking his opinion, and that his remaining interest in such undivided joint property be not injured; further, that no sale of property be made until the debts of my aforesaid partner *John McDonogh* and myself, under the firm of *John McDonogh & Co.*, and *Shepherd Brown & Co.*, are paid, except for the purpose of paying such debts. After payment of these debts and debts due individually by myself, (which are small,) I will, that all my property and effects of every kind, except such as shall hereinafter be disposed of, shall be, and remain for ever, the property of those hereafter named, in the following proportions, either to be held by them jointly, and the profits enjoyed by them in said proportions, or sold and divided among them in said proportions, as a majority among them (counting by the amount or proportion) shall determine, viz: the whole of my property and effects remaining after the payment of all debts against it, shall be apportioned into eight undivided parts, one of which parts, or one-eighth of all my net property as above, I will and bequeath to the heirs of my brother *John Brown*, who died in Jonesborough, State of Tennessee, to be equally divided between his sons and daughters, and in case of the death of any of them, leaving heirs, such heirs to enjoy, in the same manner, the deceased father or mother's part."................................

"I will and bequeath to the heirs of my sister *Sarah*, wife of *William Eaty*, one part, or one-eighth of my whole property, in the same manner as the two foregoing, but the use or benefit of the same to be used and enjoyed by her for life."

He appointed *John McDonogh*, *William W. Montgomery* and *John Hiram Brown* his executors, giving to them, or any two of them, full powers without the interference of judicial or extra judicial authority.

On the 15th and 16th days of June, 1818, the executors caused the real estate, both separate and that in partnership with *McDonogh*, to be sold at public auction. *McDonogh* himself, although one of the executors, became the purchaser of many tracts and lots of land in different places. The titles however were, at that time, to most of the tracts of land, only inchoate.

The executors filed their account in 1822, in which the price of these purchases by *McDonogh* were carried to the credit of the legatees, and the balance in the hands of the executors, consisting of notes payable in one, two and three years, was set down at $57,244 88.

On the 25th day of June, 1823, most of the heirs of *Shepherd Brown*, deceased, filed in the District Court a suit, among other things, attacking with great particularity the sales made by the executors to *McDonogh*, and praying that said sales be set aside and petitioners restored to their rights in said immovables, and for judgment against *McDonogh* and the other executors for the value of such immovables as were in a situation that a partition or return could not be awarded.

*Mrs. Sarah Eaty* was a party to this suit, but no mention was made that she was a married woman, neither in the petition or power of attorney.

GREENWOOD
v.
NEW ORLEANS.

On the 24th day of January, 1824, *William Brown*, acting upon insufficient powers of attorney, entered into a compromise of this suit, and a final judgment was rendered therein. From this judgment, *Sarah Eaty* and all the other plaintiffs prosecuted their appeal to the Supreme Court. The judgment of the lower court was reversed and the cause remanded for a new trial. See case of *Brown et al.* v. *Brown*, 2 N. S. 441.

After the case was remanded, certain of the heirs in whose favor the judgment had been reversed, compromised with *McDonogh* a second time, this time upon sufficient powers, and a judgment was rendered to that effect in the Probate Court, in February, 1825, reserving to *Mrs. Eaty* and her heirs the right to make themselves parties to the judgment and to accept the same terms.

On the 26th day of May, 1825, *William Eaty* and wife, *Sarah Eaty*, and their children, *Elizabeth Greenwood* and husband, *Sarah B. Matilda Eaty* and *Shepherd B. Eaty*, as persons of full age, and *William Eaty* and *Sarah Eaty* as tutors to *Susan Eaty* and *Abraham S. Eaty*, executed a very full and formal power of attorney to *W. H. Eaty*, and authorized him to compromise with the executors. *Henry W. Eaty* was also a child of *William* and *Sarah Eaty*. In the power of attorney, the usufruct of *William* and *Sarah Eaty* to the property or money to be recovered or obtained in compromise is recognized and the right of property in the children.

On the 7th day of July, 1825, *Henry W. Eaty*, *Perigrine Greenwood* and *Elizabeth Eaty*, his wife; *Hannah Matilda Eaty* and *Shepherd B. Eaty*, describing themselves as majors, and *Susan Eaty* and *Abraham S. Eaty*, minors, by *William Eaty*, their father and natural guardian, *William Eaty*, as husband of *Sarah Eaty*, filed their petition in the Probate Court, reciting the former litigation and the compromise made with their co-heirs, praying that they be recognized as parties; that their petition be served on the defendants; that the legacy be decreed to belong to the petitioners, and the usufruct or life estate therein to said *Sarah* and *William Eaty*; and that said executors be decreed to pay petitioners $9,803 80 stipulated to be paid for said legacy in said compromise. *McDonogh* acknowledged the capacity and accepted service of the petition of the plaintiffs.

The same day, a judgment was entered by consent, it being signed by *John McDonogh* and *John R. Grymes*, for defendants, *Henry W. Eaty*, for himself and as attorney in fact of all the other plaintiffs; *James Workman*, of counsel for plaintiffs, and *Watts & Lobdell*, of counsel for plaintiffs.

The judgment purports to be rendered on the calling of the cause by the consent of *William Eaty* and *Sarah Eaty*, his wife, *Henry Eaty*, *Perigrine Greenwood* and *Elizabeth*, his wife, *Hannah B. Eaty* and *Shepherd B. Eaty*, and *Susan Eaty* and *Abraham S. Eaty*, minors represented by their father and mother, their natural guardians and tutors represented by *William H. Eaty*, their attorney in fact, and by *James Workman* and *Watts & Lobdell*, for plaintiffs. It decrees to each of said children of *William* and *Sarah Eaty*, in full satisfaction of their portion of the succession of *Shepherd Brown*, $1633 96, making in all $9803 80, charged with the usufruct of said *William* and *Sarah Eaty*, and decreed the defendants to pay the costs, and that *John McDonogh* save the plaintiffs harmless as warrantors from all claims on account of the partnership of *Shepherd Brown & Co.* and *John McDonogh & Co.*, and that all the rights which the plaintiffs or any of them might or may have in the lands, tenements, debts, rights and credits belonging to said succession of *Shepherd Brown*, be ceded to *John McDonogh*, surviving partner.

The day the judgment was entered and signed by the *parties* in open court, viz., July 7, 1825, *W. H. Eaty*, as attorney in fact, acknowledged the receipt of the $9803 80 awarded by the judgment.

The judgment was signed by the Probate Judge on the 16th of July, 1825.

On the 2d day of July, 1855, within a few days of thirty years after the compromise and decree, the present plaintiffs, *Sarah Greenwood* and others, as heirs of *Shepherd B. Eaty* and *Abraham S. Eaty*, filed their petition attacking the judgment of 7th July, 1825, alleging that the same was not binding on *Shepherd B. Eaty*, *Abraham S. Eaty* and *Susan Eaty*, because they were not parties to the same, because the agent who undertook to represent them had no authority therefor, nor to compromise their claims, and because they were minors, and because no compromise could legally be made except under the authority of a competent tribunal. They attack the adjudications made to *McDonogh* for the same causes of nullity set up in the said action instituted by *Edward Livingston* on behalf of the heirs of *Shepherd Brown*, in 1823. They pray to be recognized as legatees of *Shepherd Brown ;* that defendants be ordered to file an account ; that petitioners be decreed to be the owners and put into possession of all the movables and immovables and slaves of *Shepherd Brown*, and that the court may order a partition thereof ; that defendants be decreed to pay petitioners 11-192 parts of the fruits and revenues of said property ; that for such property as has been alienated by said *McDonogh*, the defendants be decreed to pay petitioners the fruits and revenues up to the time of alienation, and the price received by him and interest, and for general relief.

The defendants, by their answer, put at issue the heirship of plaintiffs, plead the judgment of 1825 as *res judicata*, and the prescriptions of two, four, five, ten, twenty and thirty years.

From this sketch of the proceedings, it is evident the burden of the controversy rests upon the plaintiffs to show that the judgment of July, 1825, is not obligatory upon them, and they have addressed themselves to this argument with great research and array of authorities.

Their case must rest in effect on these propositions of fact and law which we extract from the voluminous briefs of the plaintiffs, viz :

1st. *Shepherd B. Eaty*, deceased, although described as a major in the proceedings, was really a minor in July, 1825, and consequently not bound by the decree.

2d. *Susan Eaty*, the plaintiff, and *Abraham S. Eaty*, deceased, as minors, were not properly represented by their father and mother in the compromise, and they are not therefore bound by the said consent decree.

We will consider these propositions in the order we have set them down.

I. To prove that *Shepherd B. Eaty* was a minor, a family Bible is produced, which purports to contain a record of the births and deaths of the children of *William* and *Sarah Eaty*. In the entry for *Shepherd Brown Eaty*, a blank appears to have been left for the date of his birth, and it is filled up *in pencil* as of the 25th of February, 1805. This would have made him 20 years of age at the time of the decree. The plaintiffs also produce sundry witnesses who swear they were acquainted with the parties ; that the Bible was the family Bible, known by one witness for forty years, and that the entries therein correspond with their recollections. One witness swears to the ages of the children as corresponding to the entries in the Bible, but evidently testifies with reference to it.

In our opinion, the testimony is entirely insufficient to set aside proceedings which have been acted upon and tacitly acquiesced in for nearly thirty years. *Shepherd B. Eaty* died in 1835, he therefore survived this judgment ten years. He does not appear to have complained of it.

The Bible produced, instead of being kept as a record of events at the time of their occurrence, appears to contain several entries made with the same pen and ink, and apparently at the same time; hence the blank left for the date of the birth of *Shepherd B. Eaty*.

The witnesses speak, after a lapse of fifty-one years, of general recollections, and not one of them refers to any distinct, positive fact occuring at the time, by which the date could be satisfactorily fixed.

On the other hand, we have the power of attorney made at a time when the fact of *Shepherd B. Eaty's* majority, whether it had arrived or was about to arrive, was, on account of its proximity, prominently in the mind of all the parties to that instrument, and when there was no interest to misrepresent the fact, and in which *Shepherd B. Eaty* takes upon himself, with the concurrence of his father and mother and major brothers and sisters, who all knew his age, the capacity of major. We think the plaintiffs have failed in their proof on this branch of their case. *Shepherd B. Eaty* must be held to have been a major, and bound by the decree of July, 1825.

II. *Susan Eaty* and *Abraham S. Eaty* appear as minors in the proceedings of 1825, and as represented by their father and mother.

It is provided by Art. 55, p. 54, of the Code of 1808, and by Art. 251 of the Code of 1825, that "Fathers and mothers owe protection to their children, *and of course*, as long as their children are under their authority, appear for them in court in every kind of civil suit in which they may be interested, and they may likewise accept any donation made to them." But it is said in this instance, the interest of the father and mother was in conflict with that of the minor. It is difficult to perceive in what respect; for the law gives to the father and mother of the minor the enjoyment of his estate as usufructuaries, without security, until his majority, and still authorizes them to appear for the minors in courts of justice. And in this instance, the will conferred the same right of usufruct for life upon the mother, and both father and mother, as well as the minors, were interested in acquiring as much as possible on which the usufruct could take effect. C. C. 553, 239; Old Code, p. 114, Art. 23.

But it is said the consent judgment is nothing but a contract of compromise, and the father and mother having only the power of tutors, could not enter into the same without the advice of a family meeting. We do not find that the power of the father and mother over the property of the minor entrusted to their administration is to be exercised under the advice of a family meeting; but if it were so, it would be one of those irregularities of which the parties could only avail themselves on appeal, or possibly by an action of nullity or rescission within the delay allowed by law, because the proper parties were before the court for the rendition of the decree. 2 Marcadé, cinquième ed. p. 181, No. 10.

Again it is said, that the judgment is a consent decree, and inasmuch as the forms of the law have not been observed, it is not obligatory upon the minors, and at most, it cannot be considered as anything more than a provisional partition which may be disregarded at any time within thirty years, and a suit for a definitive partition instituted.

The cases of *The Union Bank* v. *Marin*, 3 An. 35, and *Lecarpentier* v. *Le-* <span style="float:right">GREENWOOD</span>
*caŕpentier*, 5 An. 499, are cited to show that consent judgments decide nothing; <span style="float:right">NEW ORLEANS.</span>
that they merely authenticate private agreements between the parties and ren-
der them executory, and as to third parties, have the effect of transactions
made in authentic form, and that under a consent decree a partition has not
the effect of a judicial partition.

We have already had occasion to limit the application of the principles so
broadly announced in the case of *Hewitt, Heran & Co.* v. *Nolan Stewart's Exe-
cutors*, 11 An. 100, where we held that a judicial mortgage results from a *bona
fide* judgment, though rendered upon the confession of the defendant.

So too in the case before us, we think they are not applicable and that the
Probate Court had before it the proper parties, and that the decree pronounced
by that tribunal, although rendered by consent being followed by its imme-
diate execution, was a judgment capable of acquiring the force of the thing
adjudged, and inasmuch as no appeal was taken from it within the delay allow-
ed by law, and no action of rescission or nullity having been brought within
the period allowed by Article 615 of the Code of Practice, or even Article 3507
of the Civil Code, must be held as final and conclusive between the parties to
the same, and consequently have the like effect upon their heirs.     *Vaughan* v.
*Christine*, 3 An. 328; *Porche* v. *Ledoux*, 12 An. 350.

This view being decisive of the controversy, it is unnecessary to consider the
numerous questions presented by both the plaintiffs and defendants' counsel in
their briefs and oral arguments.

It is, therefore, ordered, adjudged and decreed by the court, that the judg-
ment of the lower court be avoided and reversed, and that there be judgment
in favor of the defendants and against the demand of the plaintiffs, and that
the plaintiffs pay the costs of both courts.