### No. 146.—C. YALE, Jr., & Co. v. J. W. HOWARD.

Where a devolutive appeal has been taken from a judgment which directs a certain number of pounds of cotton to be delivered to the plaintiff, or in default thereof to pay a certain amount in money, and execution has issued thereon, the delivery into the hands of the sheriff of the cotton is not a voluntary execution of the judgment, and the devolutive appeal may be prosecuted thereafter.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Levisee*, J. *C. M. Pegues*, for plaintiffs and appellants. *Land & Taylor*, for defendant and appellee.

HOWELL, J. The defendant obtained judgment against plaintiffs for "six thousand pounds of ginned cotton, strictly middling, or in default thereof the sum of three thousand one hundred and twenty dollars, the value thereof," and caused execution to issue. Two days after execution was issued the plaintiffs took a *devolutive* appeal, and had the judgment reversed, on the ground that it was enforcing a contract, the consideration of which was Confederate treasury notes.

A few days after the execution issued and an appeal was taken, a cotton broker in New Orleans wrote as follows to the sheriff:

"General H. T. Hays:

"*Dear Sir*—I have purchased the six thousand pounds of cotton for account of Mr. Yale, but the press will not deliver it to-day. Will you please allow the delivery of the cotton to remain over until to-morrow, and oblige," etc. ?

Yale, Jr., & Co. v. Howard.

In accordance with this the cotton, which cost nineteen hundred and twenty dollars, was delivered, and a receipt therefor indorsed on the execution.

The question is, was this a voluntary execution of the judgment? A majority of the court think not. It seems manifest that the plaintiffs were acting under compulsion of the law, for they were entreating the sheriff for a time to obey the writ which he was executing, and the fact that they chose to comply with one of the alternative demands of a writ which they could not resist does not, in our opinion, make the execution of the judgment voluntary. The sheriff was commanded to take the cotton or its value. He gave the debtors the right to deliver the cotton, which they delivered in obedience to the mandate of the law; but they continued to prosecute their appeal and were relieved from the judgment. A devolutive appeal implies the right to have the judgment executed and the obligation to refund. It seems to us that under the circumstances the action of plaintiffs was advantageous to the defendant, for had they allowed their property to be seized and sold a much larger amount would be demandable. The case in 14 An. 329, cited by defendant, differs materially from this.

It is therefore ordered that the judgment appealed from be reversed, and that plaintiffs recover of defendant the sum of nineteen hundred and sixty-one dollars, with legal interest from judicial demand, and costs in both courts.

---

HOWE, J., *concurring*. I think the plaintiffs were compelled to pay on the defendant's judgment what they did, and are entitled to recover. I therefore concur in the decree in their favor.

WYLY, J., *concurring*.

---

LUDELING, C. J., *dissenting*. This is an action to recover the value of six thousand pounds of cotton at thirty and a half cents per pound, which the plaintiffs allege was unduly paid to the defendant in satisfaction of a judgment in the suit of J. W. Howard *v.* C. Yale, Jr., & Co. It appears that judgment had been rendered in favor of Howard for six thousand pounds of ginned cotton, strictly middling in quality, and in default thereof for three thousand one hundred and twenty dollars. The judgment was based on a contract for Confederate treasury notes. A *devolutive* appeal was taken, and pending the appeal, an execution having been issued under the judgment, C. Yale, Jr., went into the market and bought the amount of cotton specified, at thirty and one-half cents per pound, and satisfied the judgment. Subsequently the judgment in the case of Howard *v.* Yale, Jr., & Co. was reversed. We think they voluntarily delivered the cotton which

they had bought for one thousand eight hundred and thirty dollars, in satisfaction of the judgment for cotton or three thousand one hundred and twenty dollars, and that if the fact had been known to the appellate court before the cause was decided, that court would have dismissed the appeal.   14 An. 329.   Besides, the contract which gave rise to the obligation of C. Yale, Jr., & Co. was decided to be unlawful.   We can not aid C. Yale, Jr., & Co. to recover back what they have voluntarily paid any more than we could help Howard to enforce his contract.   I think we should leave the parties where they have placed themselves.   5 R. 101.   If there is any equity in the case it is on the side of the defendant, who bought cotton from the plaintiffs and paid them Confederate currency which, though unlawful, had a value at the time, and which C. Yale, Jr., & Co. enjoyed.   After the judgment against C. Yale, Jr., & Co. for the price of the cotton sold, as aforesaid, had been rendered by the district court, their cupidity made them choose the alternative given by the judgment of delivering cotton instead of running the risk of having to pay the money judgment; and thus, to some extent, they have been made to discharge an obligation which their consciences should have made them observe.   I think there is no error in the judgment of the district court; I therefore dissent.

TALIAFERRO, J.   I concur in the dissenting opinion of the Chief Justice in this case.

Rehearing refused.