Mahle et al. v. Elder et al.

No. ——.

MAHLE et al. *v.* ELDER et al.

This is a suit to recover a certain piece of land on the ground that the plaintiffs were unjust-
ly deprived of it by illegal proceedings, among which was a certain compromise executed
by their tutor. All the proceedings complained of were duly homologated and confirmed.
The power to effect the compromise was conferred upon the tutor by a family meeting.
The clerk, in rendering the order of homologation, had the authority to order the tutor,
in pursuance of the directions of the family meeting, to carry out the compromise. The
authorities in support of transactions of this kind are numerous in our own jurispru-
dence.

APPEAL from the Tenth Judicial District Court, parish of Caddo.
*J. C. Moncure*, judge *ad hoc* in the place of *Looney*, district judge,
recused. *A. W. O. Hicks & N. C. Blanchard*, for plaintiffs and appel-
lants. *Land & Taylor*, for executors. *Egan, Williamson & Wise*, for
defendants and appellees.

TALIAFERRO. J. This is a suit brought by plaintiffs as heirs of one
John H. Mahle, who died in January, 1845. Nancy Mahle, his wife and
mother of plaintiffs, died in August, 1847. It seems that in 1843 John
K. Elgee, of the parish of Rapides, sold the land which these heirs are
now suing to recover to John H. Mahle, together with a number of
slaves for $11,600, for which Mahle executed his notes, payable in eight
annual installments with ten per centum interest per annum after ma-
turity, secured by special mortgage and vendor's privilege on all the
property conveyed. After the death of Mahle and his wife, the eldest
of the children, John W. Mahle, qualified as tutor to the minors. During
his tutorship proceedings were taken to effect a compromise and settle-
ment of the debt of Elgee by retroceding the property to him. The
retrocession was effected and the property, or at least that portion of
it now in controversy, was sold by Elgee to the ancestor of the present
defendants. The petition alleges that the plaintiffs were illegally and
unjustly deprived of the property, that all the proceedings, transfers,
etc., of the property they sue for, purporting to convey title thereto, are
without effect, as having been executed in contravention of prohib-
itory laws. They claim two thousand dollars rent and pray to be re-
cognized as the owners of the land sued for, and pray to be put in pos-
session, as such. The defendants except that the plaintiffs can not
indirectly and collaterally attack judicial proceedings and judgments of
courts. They allege title in themselves and plead the prescription of
ten and twenty years.

The judgment of the lower court was in favor of the defendants and
the plaintiffs have appealed.

We see no substantial grounds upon which the plaintiffs rest their
claim to recover the property sued for. They seem to rely mainly
upon alleged illegal proceedings resorted to to divest them of title, as

Mahle et al. v. Elder et al.

they were minors when the retrocession of the land and slaves was made to Elgee, their ancestor's vendor.

An examination of the record brings us to the conclusion that the proceedings in relation to the retrocession of the property to Elgee were regular and taken with circumspection. The ob'ection that these proceedings were superintended by Elgee himself, and the various legal instruments in the judicial proceedings written by him and signed by the tutor, do not vitiate them. It is fully shown that the ancestor of these claimants, John H. Mahle, had contracted a heavy debt in the purchase of the plantation and slaves from Elgee, the vendor holding a special mortgage and vendor's privilege to secure the payment of the price. Mahle and his wife both died a few years after, leaving the succession burdened with a large debt bearing ten per cent. interest which the estate was utterly unable to pay. Between the tutor of the minors, duly authorized by a family meeting, and the creditor, it seems to have been amicably agreed that the land should be transferred to Elgee, and the notes given up, which was done, and the proceedings necessary to render the transaction legal appear to us from the record to be regular.

It is objected that the clerk had no power to authorize the tutor to make the retrocession to Elgee. The family meeting recommended the retrocession as an act highly advantageous to the minors, authorized it to be carried into effect, and recommended that the tutors of the minors be authorized to carry the compromise into effect. These proceedings were duly homologated and confirmed. The power to effect the compromise was conferred upon the tutor by the family meeting. The clerk in rendering the order of homologation had the authority to order the tutor, in pursuance of the directions of the family meeting, to carry out the compromise.

The authorities in support of transactions of this kind are numerous in our own jurisprudence. 6 An. 2; 7 An. 135; 8 La. 81; 19 La. —; 3 An. 583; and various other authorities. C. C. 348; 15 An. 148.

The law and evidence justify the decree of the lower court.

It is therefore ordered that the judgment of the lower court be affirmed with costs.

———

MORGAN, J., *dissenting.* Retrocession is alienation. I find no autority which permits the alienation of real estate belonging to minors, as the result of a compromise between their tutor and persons presenting claims against them. The laws are intended to protect those who can not protect themselves. But, practically, it appears that the helpless are always wrong. When the law says that real estate belonging to minors can not be sold except by public auction, I think it meant

what it said; and I do not think that their property can be taken away from them except in the way pointed out by law.

In this case the tutor not only reconveyed the property, but he paid money and contracted a debt to enable him to complete the re-rendition. I do not think he had that right, even though his course was sanctioned by a family meeting of the friends of the minors, and ratified by the sanction of the clerk. All of them joined together had not, in my opinion, the right to allow their property to be disposed of except in the manner and form prescribed by law.

I therefore dissent from the conclusions arrived at by the majority of the court.

WYLY, J., *dissenting*. I concur in this dissenting opinion.