PROYOSTY, J.
This is a suit to annul a conveyance of minor’s property as having been made without observance of the formalties prescribed by law.
No evidence was taken, the parties having entered into a written agreement that the case should be decided on the pleadings. Whether this meant that only the facts alleged in the petition should be considered, or also those in the answer, is now matter of dispute; but it is immaterial, since the defendants lose in either event.
The facts taken from the answer are as follows: In 1901 the mother of the plaintiffs sold the property in question, which was her homestead, to Spell, and delivered possession. She reserved- the right to redeem, on reimbursing Spell the purchase price of $350, with 8 per cent, per annum interest. This reservation was made in the act of sale itself, and without limit as to time, áhe died in 1904. The two plaintiff's, whose father had died previously, were left penniless, save for the said right of redemption, considered of little or no value, and were taken charge of by relatives. In the latter part of 1904, the said land began to show signs of greater value, as an effect of the tendency of the Caddo oil field to extend in its direction, and the grandfather of plaintiffs bethought him of the advisability of redeeming; and as-Spell was claiming that the right of redemption had been lost, Decause of not having been exercised in time, and that his title was absolute, the grandfather consulted the defendants, who are lawyers, and offered to give them one-third of the property as their compensation if they should recover it for the minors by either suit or redemption, they to furnish all moneys necessary for that purpose, and be reimbursed out of the share of the minors. The grandfather was as destitute as the minors were of the means wherewith to redeem the property. Defendants would not then undertake to furnish the money, as they thought that for making the redemption the taxes paid by Spell and interest thereon would have to be added to the purchase price and interest, and that the property was not worth that much. But they deemed it advisable that the grandfather should qualify as tutor, and that the land should be inventoried as belonging to the minors; and this was done, they acting as attorneys in the matter. Things remained in that condition for some four years, until April, 1908, when a written contract was entered into between the grandfather as tutor and the defendants, whereby the defendants were to have one-third of said property for the recovery of same by suit or redemption, they to furnish all -moneys nee *185 -essary for that purpose, and be reimbursed out of the share of the minors. On the day itself on which this contract was entered into, defendants tendered to Spell $640 in redemption. Spell refused to accept. Two days later, April 10, 1908, defendants brought •suit. In this suit they made the allegations, among others, that the redemption sale was -a mere contract of security, and that the minors had continued to be owners of the property. On receiving service of citation, Spell concluded to accept the tender; and on April 14, 190S, executed a formal reconveyance to the minors. This was six days after the contract with the defendants had been entered into, and four days after suit had been brought. The redemption money was furnished by the defendants. On the 2Sth day of April, 1908, 14 days after the property had been retroceded to the minors, a family meeting was held, and the said contract by the tutor with the defendants was •duly ratified, and the tutor was authorized and directed to carry out the same; and accordingly, on the same day, April 28, 1908, he did so, by executing in favor of the defendants the conveyance now sought to be .annulled.
Defendants contend that the property did not belong to the minors, since their mother had sold it; that all they had was the right to redeem; and that a contract for enabling them to exercise this right was not an alienation of the property, but was, on the contrary, in fact and in law, a contract for the acquisition of the property, or of whatever portion of it would inure to them under the contract.
[1] This contention is not very consistent with the fact that the defendants caused the property to be inventoried as belonging to the minors, and alleged in the suit which they filed for the minors that the redemption sale to Spell was a mere contract of .security. Again, the very fact itself of a sale being made with right of redemption, instead of out and out, indicates that the vendor has not the intention of finally parting with the ownership; and the reserve of the right of redemption is the resolutory condition on the accomplishment of which matters are placed in the same situation as if the sale had never taken place (C. C. art. 2045); so that the right of redemption in principle at least would seem to represent in the hands of the vendor the property itself. But putting aside all this, and assuming, for argument, that the only thing the minors owned was this right of redemption, this right, such as it was, was property, and by an inflexible statutory rule (article 341, C. C.), the property of minors cannot be alienated, in whole or in part, by private contract, or otherwise than at public auction. The only exception to this rule is that where the sale is made to effect a partition. And the fact of a special statute having been found to be necessary for creating this exception serves to emphasize this rule. And this rule has been enforced by this court in a line of decisions extending from Gayoso de Lemos v. Garcia, 1 Mart (N. S.) 338, to Gremillion v. Roy, 125 La. 524, 51 South. 576, and involving almost every conceivable variety of attempts at disposing of minors,’ property by private contract.
This court did on one occasion approve of a retrocession made in payment of the purchase price of the property where the minors were unable to pay in any other manner and were being pressed for payment. Mahle v. Elder, 26 La. Ann. 681. But two of the five judges dissented, and on the plain ground that the said article 341, C. C., requires the property of minors to be sold at public auction in all cases without exception. The majority of the court in that case rested their opinion on the fact that'the retro-cession had been for the best interest of the minors, as if the said article 341, C. C., al *187 lowed the property of minors to' be sold at private sale in cases where it was to tbr interest of the minors to sell it in that way.
The defendants cite the case of Holliday v. Bank, 118 La. 1000, 43 South. 656, where the present bench approved a compromise whereby a certain sum was accepted in settlement of a claim of minors to certain property. The distinction between a sale, or alienation, and a compromise, is that in the compromise there is not, and in the nature of things can never be, any certainty of anything having been alienated. It is simply the settlement of a lawsuit.
[2] Defendants next contend that by Act No. 124, p. 210, of 1906, an exception to said rule of article 341, C. C., has been established in favor of contracts like the one in question made with an attorney for the recovery of property.
This act does not purport by its title to do more than amend and re-enact section 2897, R. S., creating a special privilege in favor of lawyers for their fees upon the judgments obtained by them. If, therefore,-it contained a provision amending the said article 341, C. C., such provision would be unconstitutional, null, and void as not having been expressed in the title of the act. The announcement of an intention in the title of an act to legislate upon the special privilege accorded to lawyers for their fees upon the judgments obtained by them would certainly not advise any one that the time-honored rule of article 341, C. C., by which the property of minors can be sold only at public auction was proposed to be modified. <
■The said act does not purport to do anything of the kind. It simply purports to remove the disability, real or supposed, of an attorney to contract with his client for ,an interest in the property to be recovered, in compensation for his services. The clause of said act relied upon as authorizing the alienation of minors’ property- by"private sale reads as follows:
“By written contract signed by the client;, attorneys-at-law may acquire as their fee an: interest in the subject matter of the suit,” etc..
The argument is that, inasmuch as the-attorney is here authorized to acquire by private contract, the tutor is authorized to> make the contract.
By the same token, the curator of an interdict or of an absentee, the administrator,, executor, or other legal representative of a succession, or of an estate in course of' judicial administration, could make a like-contract. In fact, all agents could, though, not authorized by their principals. Manifestly, said act has no such scope as this, and' means no more than that the attorney may make such a contract with those clients-who have the legal capacity to make the contract.
Said act is a general law, and, as such,, does not repeal, amend, or affect all those-special laws governing and regulating the capacity of persons to contract, or the manner of disposing of property in particular cases.. The rule is that a special law is not repealed’ or amended by a general law, unless the two> cannot possibly stand together, or unless the intention to repeal or amend is otherwise-manifest. 36 Cyc. 1057; 26 A. & E. E. 739. As illustrations of this rule, we will cite the-following: In the case of Hayes v. Morgan’s R. R. & S. S. Co., 117 La. 593, 42: South. 150, it was held that a statute providing that all public carriers may be sued’ at the point of delivery did not have the-effect of repealing a special act requiring-the defendant in that case to be sued at its domicile. In Welch v. Gossens, 51 La. Ann. 852, 25 South. 472, the court held that a provision of the charter of a city requiring for the election of the mayor a majority of all the votes cast was not repealed by the provision of the general election law to the effect *189 that in elections held under this law the person receiving the largest number of votes should be deemed elected; and this, although the election was held under the general election law. In Succession of Fletcher, 2 La. Ann. 498, a law authorizing the Auditor of Public Accounts “to employ attorneys to recover money due the state from any cause whatever” was held inapplicable to the city of New Orleans, as by the law creating the office of Attorney General the state had to be represented by that officer in all suits in the parish of Orleans. In St. Martin v. New Orleans, 14 La. Ann. 113, it was held that the law fixing the salary of a particular city officer was not repealed by a subsequent act conferring upon the council the power to fix the salaries of all city officers. It will hardly he said that a law authorizing in general terms lawyers to contract for a part of the property in litigation, as their compensation for their services in the litigation, is incompatible with other laws regulating the forms which must be observed in disposing of property of minors, interdicts, successions, etc.
The case was tried twice in the lower court, each time by a different judge, and was decided both times for the plaintiffs.
Judgment affirmed.