PUR CURIAM. The plaintiff requests that a rehearing be granted on the ground that we did not pass upon his motion to dismiss the defendant's proceedings in this court, for the alleged cause that the attorney for defendant, in applying for the writ of review, did not make affidavit that the defendant was absent, so as to warrant the attorney's signing the affidavit. Having observed that the affidavit recited that the defendant was a corporation having its domicile outside of Caddo parish, and having no officer or representative in said parish, we gave no further consideration to the motion to dismiss the proceedings.

For the same reason, the rehearing is denied.

======

(66 South. 749)

No. 19959.

WELLS et al. v. FILES.

(May 25, 1914. On Rehearing, Nov. 16, 1914.)

*(Syllabus by the Court.)*

JUDGMENT &747—RES JUDICATA.

A judgment in a partition suit, fixing the respective interests of the parties, and from which no appeal has been taken, constitutes res judicata as to title against all the parties to the suit, including minors properly represented in the proceedings.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1053, 1284–1296; Dec. Dig. &747.]

Provosty, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; E. W. Sutherlin, Judge.

Suit by Ruth Wells and others against John B. Files. Judgment for defendant, and plaintiffs appeal. Affirmed.

See, also, 133 La. 219, 62 South. 638.

Murff & Roberts, of Shreveport, for appellants. Thigpen & Herold, John B. Files, and Blanchard & Smith, all of Shreveport, for appellee.

PROVOSTY, J. After the death of the mother of the plaintiffs, their father contracted a debt of $300 to one Christian, and to secure it made a redemption sale to Christian of the quarter section of land which he occupied with his family as a homestead. He continued in possession until his death in 1905. The property was then of little value, and so continued until the tendency of the Caddo oil field to spread in its direction gave it a speculative value. An uncle of the plaintiffs, then (April, 1909) taking an interest in their behalf, caused himself to be appointed tutor to them and to their brother James, and caused this land to be inventoried as belonging to the minors and to their major brother and sister L. O. and Mittie Williams. In December, 1909, with authority of the court and of a family meeting, he, as tutor of the minors and as agent of the two majors, made an oil lease of a half interest in the land to the Sun Company. The act recites that the other half interest belongs to Christian. In the meantime, he was seeking to secure the services of a lawyer to have the sale to Christian set aside; and in January, 1910, he and L. O

Williams, he acting as agent of Mittie Williams and tutor of the minors, entered into a contract with the defendant by which it was agreed that defendant should undertake to recover the property, either by suit or redemption, and for his services should have a one-fourth interest. Defendant accordingly filed suit. He alleged that the said sale was a mere contract of security, and that, at all events, the father of plaintiffs had been without authority to sell more than half of the land, as it was community property belonging to the community of acquêts and gains that had existed between him and his late wife, the mother of plaintiffs. After issue had been joined in the suit, a consent judgment was entered, March 8, 1910, giving the property to the plaintiffs, but subject to a mortgage in favor of Christian for $750. A few days thereafter, on March 20, 1910, the tutor and the two major heirs made an oil and development lease of the land to the Sun Company for a cash consideration and royalties. The act recited as follows:

"And to these presents personally came and appeared John B. Files, who declared that, whereas, he has acquired an interest in said lands on account of professional services rendered by him, * * * he does now ratify, confirm, and approve the above and foregoing contract."

The cash received by the five heirs from the Sun Company under this contract was used in paying the Christian judgment of $750. Ten days thereafter, March 30, 1910, the five heirs carried out their contract with the defendant, Files, by executing a deed in his favor to a one-fourth interest in the land. Shortly thereafter one of them, L. O. Williams, sold one-half of his remaining three-fourths interest to one Clark. On October 7, 1910, the defendant, Files, as attorney for Clark, instituted a partition suit against himself and his co-owners. Service of the petition was accepted by the tutor for the minors,

James and Early, and by the other co-owners for themselves, including Mrs. Ruth Williams Wells, one of the plaintiffs in the present suit, who, a few months previously, at the age of 18, had married Charles Wells. Four days after the filing of this petition for a partition—i. e., on October 12th—an answer was filed for the defendants in this partition suit by the attorneys who in the instant suit are representing the defendant. This answer admitted the ownership of the property to stand as alleged in the petition for partition. On the same day on which this answer was filed, October 12, 1910, judgment was entered decreeing the ownership to stand as alleged and admitted, and ordering a partition in kind; and, still on the same day, October 12th, an act of partition was passed. By this act the land was divided into ten several parts. The plaintiff in partition drew lot 1, and then the defendants in partition, together or in indivision, drew, or rather took, the remaining nine lots. On March 8, 1911, the plaintiffs, Mrs. Ruth Williams Wells and Early Williams, filed the instant suit. They seek to have their sale of a one-fourth interest to the defendant, Files, annulled on the ground that the property of minors cannot be sold at private sale. On the same day on which they filed the present suit, March 8, 1911, they filed a suit against the Sun Company to annul the lease to it on the same ground. On April 5, 1911, the defendant filed his answer. He avers that the plaintiffs are estopped from attacking his title, because they have "recognized, ratified, approved, and judicially declared" it; secondly, he pleads res judicata. In the alternative, he pleads that his "title is just, legal, and equitable," because he entered with their tutor into a contract for recovering said land, which contract was duly authorized by a family meeting, and he did succeed by means of judicial proceedings in recovering said land. Finally, and still in the al-

ternative, he avers that the deed to him was the joint and several act of his vendors in said warranty deed, and that, in case he is evicted from the interest of the present plaintiffs, the other vendors, L. O. Williams, Mittie Williams, and R. H. Harrell, as tutor for the minors, Early and James Williams, owe him warranty, and he cites them in warranty. And he prays that the suit of plaintiffs be dismissed, and, in the alternative, that he have against his said warrantors the same judgment that is rendered against him, and that they be condemned to make good to him all loss of land occasioned by the present suit.

Six days after the filing of this answer, the defendant, John B. Files, as attorney for the same plaintiff in partition, Clark, took a rule on himself and his co-owners to show cause why the partition should not be homologated. Service of the petition for this rule appears to have been accepted by the tutor for the two minors and by the other co-owners for themselves. But the plaintiff Mrs. Ruth Wells denies that she ever accepted same. On October 22, 1911, judgment was entered homologating the partition, and decreeing the plaintiff in partition, Clark, to be the owner of the separate lot set apart to him by the partition, and the defendants in partition to be the owners in indivision of the rest of the land.

The trial court gave judgment in the instant suit for defendant, without assigning reasons, and plaintiffs appealed.

As to the nullity of the sale to defendant, there can be no serious controversy, after the decision of this court in the case of Keel v. Sutherlin, 130 La. 182, 57 South. 794, where a sale of minors' property was set aside under exactly similar conditions.

As to the partition proceeding upon which the pleas of estoppel and res judicata are based, it was a consent affair, the sole object of which was to separate the interest of the plaintiff, Clark, from that of the other co-owners; these other co-owners to continue in indivision. Neither the petition nor the answer stated the proportions in which the defendants to the suit either actually owned the land or were supposed to own it. The petition simply alleges that the defendants "own a nine-tenths interest," and the answer simply admits that the plaintiff has a one-tenth interest. The answer resists the partition, on the ground that the indivision is advantageous and should continue, but asks that, in case a partition is decreed, the property be divided into ten parts, and that one of them be given to the plaintiff and the nine others in indivision to the defendants. And this is what was done. True, the judgment declared what the interest of each of the defendants was in the property, but in so doing it went entirely outside of the pleadings; in fact, contrary to them, since the prayer of the answer, that the property be divided into ten lots, and one of them be assigned to the plaintiff, Clark, who owned one-tenth, could only mean that the ten lots should be equal, so that the answer, in effect, assigned an equal interest to each of the co-owners—in effect, fixed the interest of each at one-tenth. And this feature of the judgment was ignored in the act of partition, in which all the property was given in globo to the defendants after the lot to Clark had been segregated. The defendant, Files, was a co-owner for the interest which the major heirs, L. O. and Mittie Williams, had transferred to him; hence he was a proper party to the partition, irrespective of any interest derived from the plaintiffs in the present suit.

The controversy has degenerated into a consideration of three separate motions to dismiss the appeal. The first, filed on July 12, 1911, is on the grounds:

"(1) That one of the plaintiffs is a married woman and was not authorized to take the appeal.

"(2) That the appeal was not filed in this court within the time prescribed by order of the lower court and as fixed by law.

"(3) That the appeal bond herein is defective and is not in conformity with the order of the lower court."

Before the time came for the hearing of the case in this court, another motion to dismiss was filed February 21, 1912. In this motion the oil lease made to the Sun Company on March 30, 1910, is alleged, and the further allegation is made that:

"Under the terms of said lease an instrument has been signed by all parties—the said plaintiffs, your mover, and the other co-owners—instructing the said Sun Company to divide the royalty interest in the oil so produced in the proportions in which the property is owned by the various parties under the judgment of the district court," and that "said agreement constitutes a full acquiescence" in the judgment appealed from.

Another similar motion, based on a similar document of later date, was filed on September 7, 1912. These motions involved a question of fact, upon which evidence had to be taken, and accordingly this court, on November 12, 1912, remanded the case for the taking of this evidence.

A supplemental transcript containing this evidence was filed in this court on May 12, 1913. Two days later, May 15, 1913, defendant filed a third, or rather fourth, motion to dismiss. It is based on the alleged ground that the plaintiffs had, since the filing of the appeal, sold all their interest in the property, "conveying their said interest as being in the proportion set forth in the judgment" appealed from, and therefore have acquiesced in said judgment, and, moreover, are now without interest to prosecute said appeal.

This motion involving a question of fact, it, too, had to be sent to the lower court for the taking of evidence. By all these motions to dismiss the disposing of this case in this court has been greatly delayed, and the counsel for plaintiff complains that in the meantime the defendant has been collecting the royalties under the oil lease as if owner of the interest claimed in this suit.

The first of these motions to dismiss is so baseless that it has not been noticed in the briefs, and need not be further noticed here.

The fourth has no greater merit. It is based on the fact that the plaintiffs and appellants have, since the appeal, sold "an undivided twenty-five seventy-second (25/72)" interest in the land in question. It is said that this is the exact extent of their interest as fixed by the judgment appealed from, and that the plaintiffs, by so selling, have acquiesced in said judgment. Whether the assertion as to the interest thus sold being as fixed in the judgment be correct or not, we do not know. When, on the remand, plaintiffs and appellants sought to offer evidence on that point, defendant and appellee objected, and the trial court sustained the objection. The judgment thus said to have been acquiesced in does not, as a matter of fact, fix the extent of the interest of the plaintiffs and appellants, but only that of the defendant and appellee. But the point is utterly devoid of interest. It would be strange, indeed, if by suing to annul a sale I had made of an interest in my land, and having appealed from an adverse judgment, I could not sell my remaining interest in the land without thereby acquiescing in said adverse judgment upon the interest involved in the suit. This is too plain to need development.

The second and third motions to dismiss —that is to say, those of February 21, 1912, and September 7, 1912—involve the same legal question, and may be considered together. They are founded upon the alleged fact that the plaintiffs and the defendant signed the documents reproduced in the opinion of this court handed down on November 18, 1912, remanding the case the first time.

The evidence taken on the remand shows that these documents were not, as alleged in the motion to dismiss, signed by both plain-

tiffs and defendant, but that they were sign-
ed by the plaintiffs only; and it shows that
these documents were executed for the ex-
press and sole purpose of protecting the Oil
Company, and strictly as a matter between
the Oil Company and the plaintiffs, and in no
way, shape, or form as a contract or agree-
ment between the plaintiffs and defendant.
It shows, also, that said documents were
made out by the said company, and that said
company refused to pay over to the plaintiffs
the part of the royalties to which they were
incontestably and admittedly entitled unless
they signed these documents. It shows, also,
that the plaintiffs have little or no education,
knowing so little of arithmetic that they
could not have figured out the fractional
share of each co-owner in these royalties if
they had tried to. As a matter of fact, these
documents, far from being contracts, do not
even set out the interest of the several co-
owners correctly.

In Jackson v. Michie, 33 La. Ann. 723, this
court said:

"The party against whom judgment has been
rendered cannot appeal, if he have acquiesced
in the same, by executing it voluntarily.

"To take away the right of appeal, there must
be an unconstitutional, voluntary, and absolute
acquiescence in the judgment * * * on the
part of the appellant."

In Breaux v. Sarvoie, 39 La. Ann. 243, 1
South. 614, the syllabus reads:

"To execute voluntarily * * * is to exe-
cute with the intention to confirm or ratify.
The act from which confirmation or ratification
is sought to be deduced must evince such inten-
tion clearly and unequivocally. None will be
inferred when the act can be otherwise ex-
plained."

In Succession of Easum, 49 La. Ann. 1345,
22 South. 364, the syllabus reads:

"An act from which consent or ratification is
sought to be deduced must evince such intention
clearly and unequivocally.

"Nor will ratification be inferred where the
act can be otherwise explained, and in case of
doubt the party against whom the act is op-
posed must have the benefit of the doubt."

From the decision in Prentice v. Chewning,
1 Rob. 71, we quote as follows:

"In support of the second ground, it is shown
that an execution issued on the judgment, not-
withstanding the appeal, and that a tract of
land belonging to appellant was seized and sold
to satisfy the judgment, and Chewning signed
the sheriff's deed, which contains these words:
'Said James J. Chewning joins in this sale.'
The article of the Code of Practice relied on,
567, declares that: 'The party against whom
judgment has been rendered cannot appeal, if
such judgment have been confessed by him, or
if he have acquiesced in the same by executing
it voluntarily,' etc. The sheriff's sale took place
in November previously to the appeal. But we
are of opinion that the sale was still a forced
one, nothing showing that the appellant con-
sented to the issuing of the execution. Even if
the judgment were to be reversed, the title of
the purchaser would be valid, independently of
the written consent of the appellant, expressed in
the sheriff's deed. At most that consent would
amount only to a waiver of a monition, so far
as it concerned him. It was perhaps for his
interest to make no opposition to the sale, as
the land would probably sell for a higher price.
But it was not in his power to prevent the exe-
cution of the judgment, when the writ was in
the hands of the sheriff, as his appeal then pend-
ing was not suspensive. We cannot consider
this as such an acquiescence in the judgment
and voluntary execution of it as defeats his
right of appeal."

In Milliken v. Rowley, 3 Rob. 254, this
court said:

"The alleged acquiescence consists in having
proceeded, in conformity with that part of the
judgment which decreed a partition, to partake
the land, and to have the portions of each party
set forth and designated by a further decree of
the same court, homologating the operations and
proceedings of the notary and experts in making
the partition, and ordering that a writ of pos-
session be issued to put the plaintiffs in posses-
sion of the half allotted to them, on their pay-
ing or tendering the above mentioned sum al-
lowed for improvements. It does not appear
that the plaintiffs have ever acquiesced in that
part of the judgment, which condemns them
to pay that amount; and the defendant does
not complain, and has not appealed from so
much of the judgment as decrees one-half of
the land to the plaintiffs. This is not, in our
opinion, such an acquiescence in the judgment,
by executing it voluntarily, as is contemplated
by article 567 of the Code of Practice. The
motion is overruled."

We take from Hennen's Dig. p. 32, as fol-
lows:

"Payment of costs by defendant, who takes
a devolutive appeal, is not such an execution

of the judgment as bars his right of appeal. Cuny v. Dudley, 6 Rob. 77.

"Where plaintiff sues for a promissory note and damages for its detention, defendant's acquiescence in that part of the judgment which decrees the note to plaintiff will not preclude the former from appealing from so much of it as assesses damages. Liles v. N. O. Canal Co., 6 Rob. 273.

"Where a creditor, who has obtained judgment in an attachment suit, in which the property was bonded by defendant, after a return of a fi. fa. unsatisfied, takes a rule against the surety in the bond to show cause why he should not be condemned to pay the debt, and appeals from a judgment dismissing his rule, his subsequently issuing an alias fi. fa. will not be considered a voluntary execution of the judgment, authorizing the dismissal of the appeal. The judgment, from which the appeal was taken, is wholly distinct from that rendered in the principal cause, and in which the fi. fa. was issued. Clements v. Cassily, 3 La. Ann. 358.

"Where an injunction, arresting the sale of property seized under a fi. fa. is dissolved on motion as to a portion of the property, but, after a trial on the merits subsequently had, is maintained as to the remainder, the creditor will not, by executing his fi. fa. against the portion as to which the injunction was dissolved, deprive himself of the right to appeal from the subsequent decree perpetuating the injunction as to the remaining portion. Mitchell v. Lay, 3 La. Ann. 593."

In Duncan v. Wise, 39 La. Ann. 74, 6 South. 13, it was held that the execution of the judgment for the excess over the reconventional demand did not preclude the plaintiff from appealing from that part of the judgment sustaining the reconventional demand, and compensating plaintiff's judgment pro tanto. The court said:

"The acquiescence, if there be any, was enforced, and not voluntary"—citing Johnson v. Clark, 29 La. Ann. 762.

In that case this court said:

"The defendants did not voluntarily execute the judgment of the lower court. They disregarded the sheriff's first notice, requiring payment of the fieri facias, whereupon he informed them that if payment was not made by a given hour he should seize, advertise for sale, and sell their stock in trade, and to that end the officer proceeded to prepare in form his notices of seizure. To avert this the defendants paid, and took immediate legal proceedings to stay the fund in the sheriff's hands. The consequences of a seizure of their stock, and its advertisement for sale, would have been far-reaching and most injurious to them. Their payment, to avert such consequences, cannot be held in any other light than compulsory. The act should be unequivocal to authorize a presumption of the abandonment of so important a right. Leggett v. Peet, 1 La. 296; Yale v. Howard, 24 La. Ann. 458."

Defendant's learned counsel assume in their brief that, in the opinion remanding this case, this court expressed itself upon the point of whether by signing the documents in question the appellants acquiesced in the judgment appealed from; but such is not the fact. The case was remanded for the very purpose of ascertaining the circumstances under which the said documents were executed.

The evidence taken on the remand, far from showing that the plaintiffs were willing to acquiesce in the judgment, shows, on the contrary, that their firm and fixed intention and determination was to prosecute their appeal, that they executed the documents in question simply and solely because they were forced to do so in order to induce the Sun Company to pay them what was justly, incontestably, and admittedly their own, and strictly as a matter between them and the Sun Company, and having absolutely nothing to do with the contest between them and the defendant.

No doubt a party can take no benefit from a judgment and yet appeal from it; but by their said conduct these appellants were not taking any benefit under the judgment, but were simply receiving what was incontestedly their own, and agreeing to hold the Sun Company harmless if it made payment according to the fractional distribution in the documents, whether these fractions were right or wrong. In the cases cited in the appellee's brief the appellant's right to receive, or to take, had been a matter contested in the suit, and, when the appellant received and took he did so by virtue or authority of judgment, and hence acquiesced in it; but in the instant case the appellants received, or took, nothing contested in the judgment.

They did not receive by virtue of the judgment, but by virtue of their interest well recognized and never in contest. To illustrate: If A. sues to set aside a sale he has made of an undivided interest in his rented building, and his suit is rejected, and he appeals, he does not acquiesce in the judgment by receiving thereafter from the tenant one-half of the rent. In such a case, he does not receive this rent by virtue or authority of the judgment which has rejected his claim to the contested half interest in the building; but he receives it by virtue of his uncontested ownership of the other half interest.

The motions to dismiss are overruled.

The question of warranty discussed in the briefs of defendant has not been raised by any pleadings, and therefore cannot be considered; the only warranty mentioned in the pleadings being against L. O. and Mittie Williams, who are not parties to this appeal, except as appellees, and a judgment cannot be amended as between appellees.

Therefore it is ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the plaintiffs Ruth Williams Wells and Early Williams have judgment against the defendant, John B. Files, annulling and setting aside the sale made by R. H. Harrell, tutor, to the said John B. Files, of one-fourth undivided interest in the northwest quarter of southwest quarter and east half of northwest quarter and southwest quarter of northwest quarter of section 10, township 21, range 16, of Caddo parish, of date March 30, 1910, and recorded in books of conveyances of the clerk's office of the parish of Caddo in Book 64, page 148, and that the said defendant, John B. Files, pay the costs of this suit.

O'NIELL, J., takes no part.

### On Rehearing.

LAND, J. We shall first consider the plea of res judicata filed by the defendant.

In October, 1910, Ernest Clark sued for a partition of the lands in question, representing that he owned an undivided one-tenth interest therein, and that the other nine-tenths belonged to L. O. Williams, Mittie Williams, and John B. Files, and the minors, Early, Ruth, and James Williams. The said defendants accepted service of the petition and acknowledged citation. R. H. Harrell, tutor, signed for Early and James Williams, and Ruth Wells, born Williams, and Charles Wells, her husband, signed for themselves.

Defendants answered, admitting plaintiffs' co-ownership as alleged, but averred that it was not to the advantage of defendants that said property be partitioned either in kind or by licitation, and that the same should be held in indivision by defendants in order that it might be developed as a whole for gas or oil.

Defendants further averred that they had entered into an advantageous mineral lease, covering their interest in said lands, and granting to the Sun Company the privilege of exploiting said lands for gas and oil.

Defendant prayed that plaintiffs' demand be rejected and that his suit be dismissed.

The partition suit was tried, and, "by reason of the law and the evidence being in favor of the plaintiffs and against the defendant," judgment was rendered, recognizing that the parties to the suit were co-owners of the lands, sought to be partitioned in the following proportions:

One-tenth to Ernest Clark, two-twentieths to L. O. Williams, three-twentieths to Mittie Williams, three-twentieths to Early Williams, three-twentieths to Ruth Williams Wells, three-twentieths to James Williams, and one-fourth to John B. Files, and decreeing a partition in kind of the common property between the plaintiff and the defendants. The judgment referred the parties to a certain notary to effect the partition.

The procès verbal of the notary recited that the lands were divided by the experts in ten equal portions or lots of equal value, and that Ernest Clark drew lot 1, and the defendants drew the remaining nine lots.

The partition thus made was homologated by a judgment of the court, of date October 22, 1910, rendered on a rule sued out by the plaintiff, Clark, to which all the defendants were made parties.

This judgment also recognized the defendants in the partition suit as the owners of the S. W. ¼ of N. W. ¼ and N. W. ¼ of S. W. ¼ of section 10, township 21, range 16, less a certain described strip allotted to the plaintiff, Clark; and the defendants were also recognized as the owners of the E. ½ of N. W. ¼ of the same section.

Plaintiffs in their petition ignored said partition proceedings and judgment rendered therein.

The position taken in our former opinion was that the proceedings were by consent, and that the judgment, in so far as it recognized the several interests of the defendants in the property, went entirely outside of the pleadings and contrary to them.

Plaintiff, Clark, prayed for a partition in kind of the property. The defendants resisted a partition of any kind, because of the mineral lease of the property to the Sun Company. The judgment was in favor of the plaintiff, and a partition in kind was ordered. A partition is the division of property among coheirs or co-owners, "according to their respective rights." C. C. art. 1293.

We cannot perceive how a partition of any kind can be made without the judgment first determining the respective shares or portions of the co-owners. There must be as many lots as there are heirs or co-owners "entitled to a share," and the lots must be drawn for. C. C. arts. 1364–1366.

The petition admitted that the defendants owned an undivided nine-tenths interest in the property, and defendants prayed, in the alternative, that said land be divided into lots of equal value, in order that one be partitioned to the plaintiff and that nine may be partitioned to respondents in indivision. The judgment recognized the plaintiff and the defendants as the owners in indivision of the tracts sought to be partitioned, *in certain proportions*, and ordered a partition of the same according to law. We think that the very nature of the suit in which minors were interested required the judge to fix the respective shares of the parties in the property to be partitioned. The drawing of the 9 lots as a whole by the defendants may have been an informality, but it was to their common interest to hold them in indivision during the existence of the lease to the Sun Company.

A few months later, oil was discovered in paying quantity on the premises. It is evident that, if the nine lots had been subdivided among the defendants, the discovery of oil on one of them would have inured solely to the advantage of the defendant who had drawn that particular lot. The formation of lots in a partition suit is not essential, where manifest injury would result to the parties. Succession of Aguillard, 13 La. Ann. 97. It appears that the Sun Company had acquired by the lease the *exclusive right* to exploit the premises for oil, gas, and other mineral, and the further right to have the lands partitioned in kind for the purpose of having the same developed for minerals.

The defendant, J. B. Files, was a party to the lease, which recited that he had acquired an interest in said lands on account of professional services rendered in perfecting the lessors' title to the same. Ten days later the lessors conveyed to said Files an undivided one-fourth interest in the leased premises, and he was the record owner of said interest when the partition suit was instituted in October, 1910. The original interest of

the plaintiffs was one-fifth each, which was reduced to three-twentieths each by the sale to Files.

The judgment of partition, in fixing the proportions of the defendants in that proceeding, was in accord with the respective titles of the parties.

The judgment recites that it was rendered "by reason of the law and the evidence." There is nothing on the face of the record to suggest that it was rendered by consent of parties. In a similar case this court said:

"The defendants cannot be heard to attack the judgment of partition collaterally. They can assail it only on the face of the proceedings. If, as claimed, it was rendered on insufficient evidence and in disregard of the forms prescribed by law, the error, if any, could have been revised on appeal only. [Taliaferro v. Steele] 14 La. Ann. 656; [Abbot v. Wilbur] 22 La. Ann. 371. The court was competent, the proceedings are by petition and answer, and the judgment is in proper form. The answers are not a confession. [Skinner v. Dameron] 5 Rob. 448; [Marbury v. Pace] 29 La. Ann. 558. They are signed by the defendants in proper persons. They purport neither to deny in or to admit any averment, but leave the whole matter to the determination of the court." Bayhi v. Bayhi, 35 La. Ann. 527.

In Paul v. Lamothe, 36 La. Ann. 318, this court held that a final decree of partition, if attackable at all, can be attacked only in a direct action for its annulment. Even a consent judgment is binding between the parties, until reversed or annulled within the time prescribed by law. Greenwood v. City, 12 La. Ann. 426; Dunn v. Pipes, 20 La. Ann. 276.

Plaintiffs did not appeal from the decree of partition or from the judgment of homologation. They have not sued to rescind the partition for lesion or other cause. They have elected to ignore the partition proceedings and decrees as null and void. They must stand on this election.

In Hooke v. Hooke et al., 14 La. 23, the syllabus reads:

"An action for a partition, * * * in the court of probates, fixing the rank and portion of heirs, inheriting a succession, is res judicata when not appealed from, and no one of them can be deprived of his share in a subsequent suit."

In that case, Jane Browder, a minor, one of the defendants, was admitted to be one of the heirs in her mother's half, and the decree of the court recognized her as such. The decree was never appealed from. In a further stage of the proceedings, several of the heirs attempted to contest the heirship of the minor and the community status of the property. The court held that the decree in favor of the minor formed res judicata between the parties, and "fixed their rights irrevocably."

In Choppin v. Bank et al., 47 La. Ann. 660, 17 South. 201, the plaintiff attacked a decree rendered in favor of the bank, in a partition suit to which he was a party. The court held that the plaintiff was concluded by the decree, and inter alia said:

"The defendants in that suit, the plaintiffs here, did not attack the title of the bank. They chose to defend on another ground. But none the less they are bound by the partition decree. That closed the controversy, so far as the bank's title is concerned. If they could reopen that controversy to urge defenses such as they now present, there would be no end to litigation. * * * We think the partition suit called on defendants for all the defenses of which the case was susceptible."

See, also, Wells v. Blackman, 121 La. 395, 46 South. 437, where it was held that plaintiff in a partition suit was concluded by the decree from setting up a further interest in the property. See, also, Scovell v. Heirs of Levy, 106 La. 122, 30 South. 322, affirming Choppin v. Bank, 47 La. Ann. 660, 17 South. 201.

Ownership being the basis of the action of partition, the question of title is necessarily involved. Thibodeaux v. Thibodeaux, 112 La. 911, 36 South. 800. In the case at bar the co-ownership of the defendants was admitted, but their respective interests were not set forth in the pleadings, but were fixed by the judgment, presumably on sufficient evidence. The determination of the "respective rights"

of the parties was necessarily involved in the partition suit. C. C. art. 1293.

We conclude that the judgment of partition in question constitutes res judicata.

It is therefore ordered that our former decree herein be vacated, and that the judgment appealed from be affirmed; costs of appeal to be paid by the plaintiffs.

See dissenting opinion of PROVOSTY, J., 66 South. 755.