LE BLANC, Justice.
This is a suit brought under the provisions of the Uniform Declaratory Judgment Act, LSA-R.S. 13 :4231-13 :4246, to have determined the ownership of the mineral rights in a tract of land consisting of 140 acres, located in the Ruston Gas Field in Lincoln Parish, said land comprising the East Half of Southwest Quarter of Southeast Quarter (E% of SWJ4 of SEJ4), and the Southeast Quarter of Southeast Quarter (SE% of SEJ4) of Section 36, Township 19 North, Range 3 West, and the South Half of Southwest Quarter (S% of SW^4) of Section 31, Township 19 North, Range 2 West.[1]
The proceeding was provoked by the Arkansas Louisiana Gas Company which alleged itself to be the owner of a valid oil, gas and mineral lease covering the property in question, which lease, it further alleged, has been maintained and is at present in full force and effect. It sets out in detail, in the petition, the ownership of the mineral rights, subject to its lease, in the following parties: John W. Thurmon, W. S. Moore, Add Thompson, Mrs. Lois Oliver Holstead, James O. Holstead, George B. Holstead, Jr., Glen L.' Shadow, Mrs. Zoe Heard McGinty, and Mrs. S. J. Heard as owners of the mineral rights in one part of the property and Glen L. Shadow, Mrs. Zoe Heard McGinty and Mrs. S. J. Heard as owners in the other part.
It is then alleged that Dhu Thompson, Lanier and Lea S. Thompson, all residents of Ouachita Parish, claim to be the owners of the same mineral rights and have made formal claims to such ownership through letters addressed to petitioner and its attorneys. It is further alleged, however, that the said Thompsons are not the owners of any mineral rights in the property and that any rights they may have had heretofore, have never been exercised, nor interrupted nor suspended so as to prevent the loss thereof by the prescription of ten years, liberandi causa, under the laws of this state and particularly Article 3546 of the LSA-Civil Code which prescription is expressly pleaded.
It is also alleged that of what mineral rights the Thompsons may have had in the West % of the SWJ4 of the SWJ4 of Sec. 31, Township 19 North, Range 2 West, a certain interest was acquired by the North Central Texas Oil Company, Inc., by virtue of certain conveyances which are fully described, but as to these also it is alleged that the North Central Texas Oil Company is not now the owner of any such mineral rights and what it may have *873 acquired through the said conveyances has never been exercised and has been lost by the same prescription of ten years liberandi causa.
All of the parties mentioned in the petition are made defendants in the proceeding and judgment is prayed for declaring the oil, gas and mineral lease in favor of petitioner by all of the parties other than the Thompsons to be a valid and currently effective lease and that the ownership of the mineral rights in the said property, subject to the said lease be declared to be in all of the parties in the respective proportions' and interests as set out in the petition, and further that there be judgment against Dhu Thompson, Lanier Thompson and Lea S. Thompson and North Central Texas Oil Company, Inc., sustaining the prescriptions pleaded.
North Central Texas Oil Company, Inc.,(1 appeared in answer to the citation served on it and disclaimed all interest in any of the mineral rights and further answered admitting that any rights it may formerly have owned have been lost by prescription.
Dhu Thompson, Lanier Thompson and Lea S. Thompson answered denying the allegations of the petition and affirmatively averring that prescription liberandi causa has not run against their ownership of the mineral rights. In support thereof they set out the various deeds and transactions under which they present their claim. All of these will be hereinafter referred to. Accordingly they pray for judgment in their favor decreeing them to be the owners of the entire minerals in and under the property and entitled to those that may have been produced therefrom and that the plaintiff be ordered to. account to them for such production as may hereinafter accrue.
All of the other parties made defendants also answered. It may be said that they virtually joined the Arkansas Louisiana Gas Company in all of the allegations of its petition and prayed for judgment in the same manner.
The case was submitted to the District Court on the production and the offering in evidence of all the documents involved and in addition, on a stipulation of facts entered into by counsel for all parties in interest. There was a very short note of testimony taken which testimony affects the case only according to the view that is taken of the issues presented and on the basis on which they are to be decided.
The District Judge rendered, judgment with written reasons overruling the pleas of prescription filed by the plaintiff and the remaining defendants who claim to own the mineral rights, recognizing the defendants Dhu Thompson, Lanier Thomp-, son and Lea S. Thompson as the owners of said mineral rights in the property in the proportions set forth by them in their answer, and further ordering the plaintiff, Arkansas Louisiana Gas Company, to pay to the said Thompsons the value of their interest out of all the production, subject to a credit of their proportion of the costs *875 of operations. Appeals were taken by the plaintiff ■ and certain of the defendants.
The pertinent facts of the case are not disputed. Chronologically they are as follows :
On March 8, 1915, Dhu Thompson, then married to Lea Stamper Thompson, with whom he was living and between whom the community of acquets and gains existed, purchased the property described in plaintiff’s petition from the heirs of Harrison Roane. On March 30,' 1915 he sold the tract of land, as described, to James M. Gibson. • The sale to Gibson contained the following reservation:
“It is distinctly understood by and between the parties hereto that all Oil Rights,' in, upon and under the property herein conveyed is reserved by the vendor herein, with the usual rights of ingress and egress, which reserva- ■ tion is considered as part of the consideration in this act.”
Mrs. Lea S. Thompson died on June 11, 1918, being survived by her husband and two children, Lanier Thompson and Lea S. Thompson, the latter, a three day old infant, born on June 8, 1918. In that same month proceedings were instituted in the District Court of Lincoln Parish entitled “Tutorship of the Minor Heirs of Mrs. Lea Stamper Thompson”, as a result of which all the property of the minors, as included in the inventory taken of her estate, was adjudicated to the father, Dhu Thompson. The inventory did not contain any reference to the mineral rights which, had been reserved by their father in the: sale to James Gibson.
On June 9, 1919 James M. Gibson and Dhu Thompson entered into an agreement purporting to be a correction deed of the sale' executed between them on March 30, 1915 with regard to the reservation therein contained. This instrument, after quoting the reservation verbatim, contains the following clause with regard thereto:
“Now, be it known and remembered, that it was the intention of the parties to said act, aforesaid, that the reservation above made should not only cover all oil rights, also covered all gas and other minerals, in, under and on said premises, with all necessary rights of ingress and egress, and other rights 'incidental to operations, and producing said oil, gas and other minerals; all of which rights are hereby conveyed to the said Dhu Thompson, the vendee named in said deed.”
Beginning in the year 1935, more than ten years after the date of the reservation made by Thompson in his deed to him, James Gibson, considering himself to be the owner of the minerals, executed several mineral sales and mineral leases covering the said property. It is through these sales and leases that the defendants, Thurmon, Shadow and others who are claiming adversely to the Thompsons, assert their interests.
It is not disputed that prior to 1944, prescription liberandi causa was suspended by *877 the minority of a servitude holder and anyone holding with him. This doctrine was first laid down in the case of Sample v. Whitaker, 172 La. 722, 135 So. 38 and was consistently followed until Act 232 of 1944 was adopted by the Legislature of .Louisiana.[2]
Lea S. Thompson who was born on June ■8, 1918 was emancipated on May 17, 1937. .From the date of the reservation made by his father in the sale to Gibson on March .30, 1915 to the date of his mother’s death, there elapsed three years, two'months and ■eleven days. Therefore, of the ten year prescription as applicable at that time, there remained a period of six years, nine months and nineteen days. The prescription which had been suspended during the minority of Lea S. Thompson at the time of the death •of Mrs. Thompson in 1918, began to run again after his emancipation on May 17, 1937. Six years, nine months and nineteen ■days from May 17, 1937 brings us to March ■6, 1944, on which latter date prescription would have accrued. It is not disputed that that is the date on which the Thompsons would have lost any mineral rights they had in the property had it not been- for subsequent acts which, in the meantime, they contend, had interrupted prescription.
' Prior to or during the year 1943 the Arkansas Louisiana Gas Company acquired oil, gas and mineral leases from James Gibson and from the parties to whom he had allegedly sold mineral interests in and to the property.
In November 1943, Arkansas Louisiana Gas Company conceived the idea of pooling a 640 acre unit of land in the area including the 140 acre tract here involved, on which they held the leases. A pooling agreement was prepared by their own attorneys who obtained the necessary signatures from all parties concerned. During that time the abstract of title covering the land involved in this proceeding was being examined by one of their attorneys who discovered the possibility that the Thompsons may still have a mineral interest in the property and the company was advised accordingly.
In accordance with this advice, apparently, on December 13, 1943 it secured an oil, gas and mineral lease from Dhu Thompson and his two sons covering the 140 acre tract of land. That lease contained the following clause:
“The consideration for the granting of this lease is that the lessee, Arkansas Louisiana Gas Company, shall commence the drilling of a well within a distance of one mile from this property on. or before April 1, 1944, and in the event that said well is not commenced by the said lessee on or before the *879 date herein set out, then in that event the said lessee, Arkansas Louisiana Gas Company, shall release and return this lease to the lessors and be relieved of any further obligation or liability.”
It is not clear as to the exact date on which the Thompsons were asked to and did sign the pooling agreement but presumedly it was also about at the same time as they entered into the lease with the Arkansas Louisiana Gas Company.
The instrument under which the 640 acre unit was pooled was a conventional agreement among all the parties thereto and it contains the following stipulations:
“For all purposes, the mineral leases heretofore granted by mineral owners, and all other mineral rights now owned by Mineral Owners, insofar as they grant the right to develop for and produce gas, natural gasoline extracted ■ from the gas, and condensate liquids normally produced in the operation of a gas well in the above described 640 acre 'unitized tract’ are hereby pooled and unitized and shall be treated, developed and operated for the purposes of said mineral leases and mineral rights, affecting said property as one unit and one tract.”
And further it stipulated:
.“The drilling in search of gas, or the production of the unitized minerals under the terms of this agreement on any portion of the unitized tract hereinabove described, shall be taken and accepted as such drilling and production under the terms of each of the mineral leases or mineral contracts, covering, applying or affecting the unitized tract, and so long as there may be any drilling or production hereunder on any portion of such unitized tract,, such drilling and production shall produce the same effect respecting the continuance of all leases in force and effect as if drilling had been done on or production secured from that portion of the unitized tract under the separate lease or leases covering said portion of the unitized tract.”
From the stipulation entered into by-counsel for all parties it is shown that pursuant to a permit issued by the Commissioner of Conservation on January 4,. 1944 the Arkansas Louisiana Gas Company began the drilling of a well in search of gas on the unit that had been pooled but not, however, on the 140 acre tract that is. involved in this suit. These operations were not successful and on March 25, 1944-the well was abandoned as dry. It is conceded by the stipulation of counsel that since this well had been drilled to a' depth at which there was reasonable expectation of production this amounted-to good faith-drilling of the unit. This, according .to the-jurisprudence, constituted such drilling as. amounted to a sufficient use of the servitude to interrupt prescription. See Lynn v. Harrington, 193 La. 877, 192 So. 517; *881 Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65; Union Sulphur Company v. Lognion, 212 La. 632, 33 So.2d 178.
According to the stipulation, it further ■appears that on March 31, 1949, and later ■corrected as of April 6, 1949, the Commissioner of Conservation issued an order with reference to fieldwide rules governing •the exploration for and production of gas ¡and/or condensate from the Ruston Field :in Lincoln Parish. Also it appears that on September 1, 1949 Arkansas Louisiana Gas 'Company applied to the Commissioner of Conservation for a permit to re-work the well which it had abandoned previously and to drill that well to a greater depth. The Commissioner issued the permit on September 6, 1949 and re-working operations were ■commenced on or about September 19, 1949. ■On or about December 3, 1949 the well was ■completed as a producer in commercial «quantities of gas at a depth of 9351 feet and it has continued producing in paying quantities until the present time.
Counsel for Arkansas Louisiana Gas Company and for the defendants other than the Thompsons make the contention that, when the pooling agreement which was signed by all the parties in this proceeding, including James M. Gibson and the Thompsons, it was not the intention of Gibson to acknowledge any mineral rights in favor of the Thompsons but that on the contrary he specifically intended to acknowledge them in favor of the parties to whom he had sold the mineral interests he thought had reverted to him. In rejecting the contention the trial judge indicated in his written reasons for judgment that as the Thompsons were the owners of the mineral, oil and gas rights, they had the right, power and authority to unitize their interests along with other mineral holders, without the signature or concurrence of Gibson and the persons to whom he had endeavored to sell mineral rights which he did not own. He held that Gibson had only a reversionary right in the minerals and that this did not constitute such an interest in him or those who held under him to warrant making them parties to the pooling agreement, basing his holding on this point on the decision of this court in the case of Sanders v. Flowers, 218 La. 472, 49 So.2d 858.
In this respect we are of the opinion that the trial judge was in error, the difference in the case relied on by him and the present being that in that case there was a valid 'order of the Commissioner of Conservation forcing the pooling of the unitized tract of land, which order was granted under the police power of the State in the interest of the conservation of oil, gas and other minerals and what was held was that the landowner who had only a reversionary right in the minerals was without right or interest to question the orders of the Commissioner. As aptly pointed out in brief of counsel for plaintiff, just as the landowner cannot increase the burden of the *883 mineral owner, by creating smaller tracts out of the original larger tract, through sales of portions of the larger tract, see Connell v. Muslow, 186 La. 491, 172 So. 763, neither can the mineral owner lessen or diminish his burden or obligation, in the absence of the landowner’s consent or the intervention of some governmental authority. In this case the pooling instrument was a voluntary agreement entered into at will and Gibson, as the owner of land included in the unit, was a necessary party to the agreement.
However we are of the opinion that the trial judge was correct in the conclusion he reached in overruling the plea of prescription against the mineral interests of the Thompsons. The very wording of the pooling agreement which was- voluntarily signed by the landowners and the mineral owners shows that the intention of all the parties was that they were thereby pooling and unitizing their interests for all purposes, and that the unitized tract was "to be treated, developed and operated for the purpose, of said mineral leases and mineral rights, affecting said property as one unit and one tract.” It further; provided that "the drilling in search of gas * * * on any portion of the unitized, -tract * * * shall be taken and accepted as such drilling * * * under the terms of each of the mineral leases or mineral contracts covering, applying or affecting the unitized tract, and so long as there may be any drilling * * * on any portion of such unitized tract, such drilling * * * shall produce-the same effect respecting the continuance-of all leases in force and effect as if drilling had been done on ór production secured from that portion of the unitized tract under the separate lease or leases covering such portion of the unitized tract.” (-A1L emphasis supplied.) There is no doubt that in December 1943,-the Thompsons were-the owners of mineral rights on the- 140> acre tract which would prescribe on March 6, 1944. In order for them to retain those-rights beyond this latter date, it was necessary that prescription be interrupted or that, the landowner, Gibson, acknowledge them in some manner. It would seem that the-drilling of the dry well was sufficient, under the language of the contract which we have-quoted, to interrupt prescription, but we-prefer to base our opinion on the acknowledgment of the Thompson’s rights by Gibson when he signed with them the unitizing-agreement under which the land was pooled, with others in the 640 acre unit. The following additional clause contained in the-. agreement makes his acknowledgment-clear :
“This agreement is executed with the , specific purpose and intent on the part of each of the parties hereto to acknowledge the ownership of each and. all of the parties hereto of their respective interests in and to the oil, gas,, distillate, condensate, and other minerals and mineral rights in the lands-pooled herein, so as to interrupt the *885 running of the liberative prescription of non-use”.
The wording of the agreement dispels the contention made that Gibson’s intention was to acknowledge rights of the other parties to whom he had sold mineral interests and never intended to acknowledge those of the Thompsons. Mere error or mistake on his part in signing the agreement is not sufficient to set it aside. It can only be set aside on the ground of fraud and there is no charge of fraud made against any one.
For the reasons stated the judgment of 'the district court is found to be correct and it is therefore affirmed at the costs of the appellants.

. The cash value of the mineral rights in dispute is far in excess of the sum of $2000 and therefore this court is vest- ' ed with appellate jurisdiction of the case.

. Act 232 of 1944 which is now incorporated in LSA-R.S. 9:5805 did away with the suspension of prescription in favor of major co-owners. .That Section of the LSA-Revised Statutes was further amended by Act 510 of 1950 which does away with the suspension of prescription as to minors.