127 So.2d 369 (1961)
J. I. ROBERTS, Plaintiff-Appellee,
v.
Elzie Montgomery COOPER et al., Defendants-Appellants.
No. 9395.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1961.
Rehearing Denied March 10, 1961.
Barham, Wright & Barham, Ruston, for appellants.
Tucker, Bronson & Martin, Shreveport, for plaintiff-appellee.
George Fink, Monroe, for defendant-appellee Elmo Mayfield.
Before HARDY, AYRES and BOLIN, JJ.
HARDY, Judge.
This is a suit for a declaratory judgment instituted by plaintiff, J. I. Roberts, as the lessee under three separate oil, gas and mineral lease conveyances covering a described tract of land containing 38.5 acres in Lincoln Parish. Plaintiff prayed for judgment recognizing the validity of his leases, further judgment declaring and fixing the ownership of the one-eighth royalty interest, provided in said instruments, as between several groups of defendants. Responsive to a plea of nonjoinder interposed by one group of defendants, the Arkansas-Louisiana Gas Company was made a party defendant. There was judgment (1) recognizing plaintiff as the valid owner of the three oil, gas and mineral leases embracing the ownership of all such rights in and to the property described; (2) recognizing the defendants, Robert L. Fuller and Elmo Mayfield as owners of the royalty interest; (3) allocating the royalty accruing under the provisions of plaintiff's lease to Robert L. Fuller and Elmo Mayfield in the proportions set forth, subject to the allocations made in favor of the defendants, Elzie Montgomery Cooper and Hattie Montgomery Ham, as described in the judgment, *370 and, finally, the judgment rejected any and all rights asserted by the other defendants. From the judgment only the defendants, Add Thompson and C. C. Moore, have appealed. During pendency of the appeal the defendant, Robert L. Fuller died, and, by motion before this court, Mrs. Alma Wilks Fuller has been substituted as the sole heir at law and proper representative in lieu of decedent.
Out of the numerous parties originally involved there remain only the appellants, Add Thompson and C. C. Moore, and the appellees, Mrs. Fuller and Elmo Mayfield. Appellants, Thompson and Moore, claim the ownership, in equal proportions, of an undivided one-fourth interest in and to the minerals under the 38½ acre tract of land described, which was awarded by the judgment from which they have appealed, to Fuller and Mayfield.
Despite the multiplicity of parties, the complex pleadings and the voluminous record, there is no dispute as to the material facts and only a single issue of law is presented for determination.
Elzie Montgomery Cooper and Hattie Montgomery Ham, fee owners of the Northeast Quarter of Southwest Quarter (NE/4 of SW/4), Section 31, Township 19 North, Range 2 West, located in Lincoln Parish, Louisiana, less one and one-half acres, by conveyance dated December 21, 1935, sold to C. C. Moore one-fourth of the oil, gas and other minerals in and under said tract of land, and C. C. Moore subsequently conveyed a one-eighth mineral interest in and under said property to Add Thompson.
By conveyances dated February 22nd and February 26, 1949, the said fee owners conveyed an undivided 20/29.25 of the minerals in the South 9.25 acres of the property and an undivided 20/29.25 of the minerals in the entire tract, less the South 9.25 acres, to Robert L. Fuller. By conveyance dated March 19, 1951 the fee owner of the South 9.25 acres of the tract conveyed such additional interest as she then may have owned in the minerals under the South 9.25 acres to Robert L. Fuller. Under these described conveyances Fuller claimed ownership of an undivided 20/29.25 interest in the minerals under the entire tract, less the South 9.25 acres thereof and all of the minerals under the South 9.25 acres.
Under a sheriff's deed dated September 19, 1951, the appellant, Elmo Mayfield, claimed ownership of an undivided 9.25/29.25 interest in the property involved, less the South 9.25 acres thereof.
The judgment appealed from recognized the Fuller-Mayfield interests in the proportions above asserted and allocated the royalty payments from production, in which the said described property participated, in accordance therewith, subject to specified interests of Elzie Montgomery Cooper and Hattie Montgomery Ham, from the beginning of production up to the respective dates upon which they divested themselves of their remaining mineral interests in the property involved.
On November 22, 1943, a voluntary pooling and unitization agreement was prepared and circulated by the Arkansas-Louisiana Gas Company under which the West Half of Section 31, Township 19 North, Range 2 West (in which the property here involved was located) and the East Half of Section 36, Township 19 North, Range 3 West were incorporated into a voluntary drilling unit. In this connection it should be noted at this point that the Arkansas-Louisiana Gas Company was not the owner of the lease on the tract of land here involved.
The said pooling and unitization agreement was circulated in counterparts, which were signed, among others, by Elzie Montgomery Cooper, Hattie Montgomery Ham, C. C. Moore and Add Thompson, but not by J. I. Roberts, plaintiff in this suit and the lessee of the property involved.
Acting under the above described unitization agreement the Arkansas-Louisiana Gas *371 Company drilled a well on the unit, but not on the tract involved in this suit, to an approximate depth of six thousand feet and abandoned said well as a dry hole, all in the year 1944. In December, 1949, pursuant to an order of the Department of Conservation unitizing the West Half of Section 31 and the East Half of Section 36, the Arkansas-Louisiana Gas Company deepened the well which had been drilled and abandoned in 1944 and completed the same as a producer. It is to be observed that the date of completion as a producing well (December, 1949) fell within the ten-year period beginning November 22, 1943 (the date of the voluntary pooling and unitization agreement) but well beyond the ten-year period beginning in 1935, the year in which the appellants, Thompson and Moore, acquired their mineral interest.
The sole question presented by this appeal requires a determination as to whether the voluntary pooling and unitization agreement executed in 1943 constituted an interruption of prescription which preserved the mineral rights of appellants, Thompson and Moore.
Appellees, Fuller and Mayfield, rely upon their pleas of ten-year prescription, liberandi causa, asserted in their answer to plaintiff's action, contending that the voluntary pooling and unitization agreement did not constitute an interruption of the running of prescription as against the mineral interests previously acquired by Thompson and Moore.
As authority in support of their claim appellees primarily rely upon Arkansas-Louisiana Gas Company v. Thompson et al., 222 La. 868, 64 So.2d 202, which involved an interpretation of the effect of the identical pooling and unitization agreement which is involved under the facts of the instant case.
Learned counsel for appellants argue (1) that the case cited supra is distinguishable by reason of the fact that Gibson, the landowner, was not aware of the fact that the defendant, Thompson, claimed any interest in the minerals, whereas in the instant case the landowners, Elzie Montgomery Cooper and Hattie Montgomery Ham, possessed full knowledge of the contents and effect of the agreement; (2) that the pronouncement in the opinion of the cited case as to the requirements essential to an interruption of prescription constituted dicta and were not relied upon as the basis upon which judgment of the court was pronounced; (3) that the case of Elson et al. v. Mathewes, 224 La. 417, 69 So.2d 734, held that the pooling and unitization agreement therein involved, which was identical with the agreement in the instant case, was effective as interrupting prescription.
The pooling and unitization agreement under examination, which, as above observed, is the identical agreement considered by the Supreme Court in Arkansas-Louisiana Gas Company v. Thompson, et al., contained, inter alia, the following representations and agreements:
(1). That the lessee (Arkansas-Louisiana Gas Company) was the owner of leases affecting "* * * all, more than, or part of * * *" the 640 acre tract of land comprising the West Half of Section 31-19-2 and the East Half of Section 36-19-3;
(2). That the other parties to the agreement, designated as "Mineral owners," were the owners of the surface or of mineral rights, etc. "* * * in and to various portions of the above described 640 acres, * * *;"
(3). That "this agreement is executed with the specific purpose and intent on the part of each of the parties hereto to acknowledge the ownership of each and all of the parties hereto of their respective interest in and to the oil, gas, distillate, condensate and other minerals and mineral rights in the lands pooled herein, so as to interrupt the running of the liberative prescription of nonuse, applicable under *372 the laws of Louisiana, to mineral servitudes * * *."
In the interpretation of the effect of this agreement the opinion of Mr. Chief Justice Fournet in the Arkansas-Louisiana Gas Company v. Thompson case declared:
"Moreover, the body of the pooling agreement on which the Thompsons base their claim not only failed to identify those designated as `mineral owners' in the property affected by the leases to be pooled, but described the property as a unitwithout specific description of the several tracts composing same or in any manner identifying the servitudes bearing on the several tracts. One of the express requirements of the LSA-Civil Code is that the acknowledgment must be of the right of the person whose title the debtor or possessor prescribes. Article 3520. Not only must such acknowledgment be specific, clear and concise, (citing numerous authorities) but the instrument must adequately describe the property to which it applies, James v. Noble, 214 La. 196, 36 So.2d 722, and must sufficiently identify the servitude as to which acknowledgment is sought to be made. Achee v. Caillouet, on Rehearing, 197 La. [331] at page 332, 1 So.2d 530. Although mineral claimants may have in mind extending their mineral rights, they are powerless to do this without the consent of the landowners. White v. Hodges, 201 La. 1, 14, 9 So.2d 433." [222 La. 868, 64 So.2d 210.]
We find no indication in the opinion that the above observation constituted mere dicta, but on the contrary it appears to us that the quoted extract had the effect of concisely formulating the requirements of a joint pooling and unitization agreement which would validate the conclusion of an interruption of prescription. These requirements may be concisely enumerated as follows:
(1). The specific identification of the parties designated in the agreement as "mineral owners."
(2). The specific description of the several tracts comprising the unit.
(3). The identification of the servitudes bearing on the several tracts.
(4). Specific, clear and concise acknowledgment of the right of the person whose title the debtor or possessor prescribes adequately describing the property to which it applies.
(5). A sufficient identification of the servitude as to which acknowledgment is sought to be made.
Measured and evaluated upon the basis of the above requirements the court held that the instrument was not sufficient for the purpose of interrupting prescription.
Almost the identical points which are advanced by learned counsel for appellants in the instant case were made in the original opinion of Mr. Justice LeBlanc in the Arkansas-Thompson case and reiterated by his dissenting opinion on rehearing.
While it is quite true, as urged by counsel for appellants, that a slight distinction exists by reason of the fact that the landowner in the cited case was not aware of the claim to a mineral interest by the defendant, Thompson, we think this is a distinction without a difference in view of the clear statement of requirements above enumerated, none of which were fulfilled either in the cited case or the one which is here under consideration.
Nor do we attach any significance as appropriate authority to the case of Elson v. Mathewes, cited supra, for the issue there presented to the Supreme Court related only to the effect of a pooling and unitization agreement upon fifty-one acres of a ninety-one acre tract, which was not included in the agreement. It is clearly stated in the opinion that the interruption of prescription as to the forty acres included *373 in the unit was conceded by the parties. This distinction was reiterated in the opinion of Mr. Justice McCaleb in Crown Central Petroleum Corporation v. Barousse, 238 La. 1013, 117 So.2d 575, 579, who restated the issue in the Elson case as follows:
"Elson v. Mathewes involved the question of whether a mineral servitude, which had been created by the defendant landowner in favor of the plaintiff covering two contiguous tracts totalling 91 acres, had been kept alive as to one of the tracts embracing 51 acres, by the production attributable to the other tract of 40 acres obtained from a well drilled on adjacent property under a unitization agreement between the mineral lessee, the mineral owner and the landowner. It was conceded therein that prescription had been interrupted as to that part of the servitude covering the 40 acres situated within the unit but plaintiff contended that, since a servitude is indivisible, the interruption of prescription as to the 40-acre tract effected an interruption as to the other tract comprising 51 acres."
Under our appreciation of the holding in the Arkansas-Thompson case, we can only conclude that the agreement relied upon by appellants in the instant case failed to comply with the requirements necessary to interrupt the prescription upon which said parties base their claims.
It is pertinent to observe that this conclusion conforms to the rules stated by this court in Placid Oil Company v. George, 49 So.2d 500, reversed on other grounds 221 La. 200, 59 So.2d 120, which was quoted in a later case decided by this Court, Brown v. Mayfield, 92 So.2d 762, 763, 766, as follows:
"We think it is well established by our jurisprudence that the acknowledgment contemplated by the codal article must comply with certain very definite requirements. The acknowledgment must be express; it must be certain; it must be definite; it must be accompanied by or coupled with the clear purpose and intention of the party to interrupt prescription by such an acknowledgment. These requirements have been considered and discussed by our Supreme Court in a number of cases, among which we particularly note Frost Lumber Industries, Inc. v. Union Power Co., 182 La. 439, 162 So. 37; Bremer v. North Central Texas Oil Co., Inc., 185 La. 917, 171 So. 75; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Vincent v. Bullock, 192 La. 1, 187 So. 35; Goree v. Sanders, 203 La. 859, 14 So.2d 744."
For the reasons assigned the judgment appealed from is affirmed at appellants' cost, and in order to comply with the statutory requirement requiring description of the property in the judgment affecting rights thereto, the following judgment is entered with respect to the interests involved in this appeal:
It Is Hereby Ordered, Adjudged and Decreed with respect to the following land in Lincoln Parish, Louisiana:
NE¼ of SW¼, Section 31, Township 19 North, Range 2 West, less and except 1½ acres sold to Lee M. Nelson's daughter,
which land is hereinafter referred to in this judgment as "the tract", that:
(1). J. I. Roberts, the plaintiff herein, is recognized as the valid owner of, and lessee under, the following oil, gas and mineral leases:
(a). Oil, gas and mineral lease by Hattie Montgomery Ham and husband, Cliff Ham, and Elzie Montgomery Cooper and husband, Fred Cooper, to J. I. Roberts, dated January 18, 1949, filed in Lincoln Parish, Louisiana, on February 4, 1949, and recorded in O&G Conveyance Book 49, page 181 of the records of said parish;
(b). An oil, gas and mineral lease executed by Add Thompson and David M. Lide, dated July 1, 1949, duly recorded *374 in O&G Conveyance Book 50, page 521 of the records of Lincoln Parish;
(c). An oil, gas and mineral lease executed by C. C. Moore, dated July 2, 1949, duly recorded in O&G Conveyance Book 50, page 545 of the records of Lincoln Parish.
And it is further decreed that the oil, gas and mineral lease described at (a) above covers and affects the entire ownership of the oil, gas and other minerals in and under the tract.
(2). Mrs. Alma Wilks Fuller is recognized and decreed to be the owner of all the oil, gas and other minerals in and under the South 9.25 acres of the tract and 20/29.25 interest in the oil, gas and other minerals in and under the tract, less and except the South 9.25 acres thereof.
(3). Elmo Mayfield, is recognized and decreed the owner of 9.25/29.25 of the oil, gas and other minerals in and under the tract, less and except the South 9.25 acres thereof.
(4). The oil, gas and mineral interests of Mrs. Alma Wilks Fuller and Elmo Mayfield in and under the tract are decreed to be subject to and covered by the lease described in paragraph (1) (a) of this judgment, and it is directed that the royalty as provided for in that lease accrued, or which may hereafter accrue thereunder, either from the production of oil, gas or other minerals from the tract, or which have or may be allocated thereto by virtue of production of such minerals from units of which the tract may be a part, be paid and accounted for by the lessee as follows:
As to the royalty for the production from or allocated to the tract, less and except the South 9.25 acres thereof:
Mrs. Alma Wilks Fuller20/29.25 of the royalty commencing as of the date of first production.
Elzie Montgomery Cooper9.25/29.25 of the royalty commencing as of the date of first production up to and including September 18, 1951, after which date she is entitled to no interest.
John W. Mayfield ½ of 9.25/29.25 of the royalty commencing with the production on September 19, 1951, up to and including November 14, 1952, after which date he is entitled to no interest.
Elmo Mayfield½ of 9.25/29.25 of the royalty commencing with the production on September 19, 1951, up to and including November 14, 1952, and after that date 9.25/29.25 of the royalty.
As to the royalty for the production from or allocated to the South 9.25 acres of the tract:
Hattie Montgomery Ham9.25/29.25 of the royalty commencing as of the date of first production up to and including March 18, 1951, after which date she is entitled to no interest.
Mrs. Alma Wilks Fuller20/29.25 of the royalty commencing as of the date of first production up to and including March 18, 1951, and after that date all of the royalty from said tract.