**INTERNATIONAL ASSOCIATION OF MACHINISTS, CRESCENT CITY LODGE NO. 37, AFL–CIO, Plaintiff,**

v.

**HIGGINS, INC., Defendant.**

**Civ. A. No. 14873, Division D.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 19, 1965.

Dodd, Hirsch, Barker & Meunier, Thomas J. Meunier, New Orleans, La., for plaintiff.

Kleinbard, Bell & Brecker, Philadelphia, Pa., George A. Burnstein, Philadelphia, Pa., Montgomery, Barnett, Brown & Read, Peter H. Beer, Richard B. Montgomery, New Orleans, La., for defendant.

AINSWORTH, District Judge.

The question for decision is whether the collective bargaining agreement between plaintiff, Machinists' Lodge 37, and defendant, Higgins, Inc., was automatically renewed for the period February 16, 1964 to February 15, 1965 by the failure of either party to notify the other of its termination. If so, shall a dispute between the parties about the rate of pay for machinists be resolved by compulsory arbitration as provided in the agreement?

This suit was brought by plaintiff, Machinists' Lodge 37, under the provisions of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, and the United States Arbitration Act, 9 U.S.C.A. § 1 et seq. Lodge 37 has been certified by the National Labor Relations Board as the exclusive representative of the machinists for the purpose of collective bargaining and is a party to the collective bargaining agreement with defendant, Higgins, Inc. Each of the other unions is also exclusively certified by National Labor Relations Board for their respective crafts. Defendant is engaged in shipbuilding operations at its plant in New Orleans. In the past Higgins has negotiated its labor agreement on a joint basis with representatives of all of the unions which represent its employees. Bargaining was on a joint basis and a single master agreement was executed by each union signing the agreement separately, there being no agreement with any union until every union agreed to the entire contract. The practice was that the unions would submit their proposals through a spokesman who for a number of years was the President of the New Orleans Metal Trades Council. The Council is an organization of independent, autonomous unions, of which Lodge 37 is a member, and is a labor organization. However, it is a separate and distinct entity from each of the bargaining unions without authority to bind any of them. The agreement under consideration was executed by the parties on May 16, 1963, effective, however, from February 16, 1963 until February 15, 1964 and to continue thereafter from year to year unless either party notifies the other in writing not less than sixty days prior to the expiration of the contract of its intention to modify or terminate the agreement. To modify or terminate the agreement therefore, it was necessary that either of the parties notify the other to that effect on or before December 14, 1963 in writing. Neither the Machinists' Lodge 37 nor Higgins, Inc. gave such a written notice to the other within sixty days of the termination date.

However, on December 10, 1963, Sincay F. Baxter, Secretary-Treasurer of

New Orleans Metal Trades Council, wrote to Higgins, Inc. with carbon copies to all participating unions, including the Machinists, notifying Higgins that the Council and affiliated signatory local unions desired to modify the collective bargaining agreement. Each of the signatory local unions (except Machinists' Lodge 37) then wrote to Higgins specifically "opening" their contracts, that is, indicating a desire to renegotiate the contract. Higgins now contends that the December 10, 1963 letter precluded automatic renewal of the collective bargaining agreement as to Lodge 37, especially since no steps were taken by the Machinists to disaffirm such letter; that Lodge 37 is estopped by its silence and failure to notify Higgins that it disavowed the December 10, 1963 letter from now asserting that the agreement was automatically renewed.

There is no question that Lodge 37 did not assert a contrary intention. But it states that though a member of the New Orleans Metal Trades Council, the Council was not authorized to act for it and that in past negotiations with Higgins the Council had never been its agent or acted for it except that the President of the Council performed as spokesman in the meetings with management which led to the agreement.

We have no difficulty in finding that New Orleans Metal Trades Council was unauthorized to send the letter of December 10, 1963 insofar as Machinists' Lodge 37 was concerned. There is no evidence that Lodge 37 had any knowledge of such a letter until a carbon copy was received after it was mailed on December 10, 1963. In all of the collective bargaining negotiations, each union has maintained its autonomy, bargained for its own craft, signed on its own behalf, yielding only to the President of the Council to be principal spokesman at the meetings where all representatives of the signatory local unions and management gathered to negotiate the agreement. New Orleans Metal Trades Council is not a party to the agreement and not signatory thereto.

But we do have difficulty on the question of estoppel, which is a close one on the evidence presented. We are principally concerned with the period December 10, 1963 through December 14, 1963. Higgins contends that the union was under an affirmative duty promptly to disavow the December 10, 1963 letter and that its failure to do so constituted silent assent to its terms. If estoppel is well founded it would be the result of Lodge 37's actions during that time, for if there was no estoppel the contract was automatically renewed on December 15, 1963 by the failure of either party to give a written notice required by the agreement to be submitted sixty days before termination of the agreement and subsequent actions would have no bearing. Estoppel is a special defense and is available to Higgins under the pleadings here. However, Higgins has the burden of proving estoppel by a preponderance of the evidence; such a plea is generally not favored and should not be maintained except in clear cases. Arkansas Louisiana Gas Co. v. Thompson, 222 La. 868, 64 So.2d 202; Sonnier v. Fris, 220 La. 1085, 58 So.2d 393. It should be applied with great care and caution in each case. Young v. New Orleans Public Service, La.App., 35 So.2d 881. Mere silence of itself will not raise an estoppel. The party asserting it must have been destitute of the real facts as to the subject matter of the controversy. The circumstances here do not warrant such a finding. Shirey v. Campbell, La.App., 151 So.2d 557. Though the evidence is far from clear cut, we decide the matter in favor of the Machinists.

When Higgins received the December 10, 1963 notice from the New Orleans Metal Trades Council, it had ceased operations at its New Orleans shipbuilding facility and declared its intention of closing the plant. Lodge 37's Business Representative, however, had a "hunch" it would reopen. Higgins finally acknowledged the December 10, 1963 letter on January 2, 1964 by writing to each of the signatory unions advising of the

discontinuance of operations and the pending disposition of its physical assets. Following the December 10, 1963 notification by the Council's Secretary-Treasurer, it had received letters from each of the signatory local unions "opening" the agreement but it had not received one from Machinists' Lodge 37. It was on notice, therefore, that Lodge 37 had not specifically declared its intention of terminating the agreement. Termination letters in the past had always been sent by the individual unions. Higgins could have written Lodge 37 on or prior to December 14, 1963 and prevented an automatic renewal of the contract. It did not choose to do so. Thereafter, in May 1964 Higgins decided to reopen the New Orleans plant on a limited basis and sought a meeting with representatives of the various unions to negotiate a temporary agreement. At this and subsequent meetings the Business Representative of Lodge 37 participated and made no statement that Lodge 37 regarded the former agreement still to be in full force and effect by automatic renewal. However, before rehiring any of the Machinists' members Higgins was on notice by letter from Lodge 37's Business Representative on July 1, 1964 that the union regarded the agreement to be in full force and that the rate per hour for the machinists was $3.29. Without resolving the dispute Higgins employed several machinists on and after July 6, 1964, ranging from three or four up to ten, but has paid them at the rate of $2.84 per hour. The union requests that we resolve the dispute by compelling arbitration as provided for in the agreement. Higgins was aware that the New Orleans Metal Trades Council had never been the agent of the signatory local unions, including the Machinists, and its President had acted only as their spokesman

in the negotiations. Also, that Lodge 37 was the exclusive bargaining agency certified by the National Labor Relations Board. When it failed to receive a letter from Lodge 37 "opening" the agreement but did receive such a letter from all of the other locals, it was on notice that Lodge 37 had not directly desired to renegotiate the contract. It took a chance, therefore, of having an automatic renewal of the agreement insofar as Lodge 37 was concerned.

The principal dispute relates to the hourly wages to be paid the small group of machinists who have been hired at the Higgins New Orleans plant when it was reopened on a limited basis. This dispute can best be settled through compulsory arbitration as provided in the agreement. We quote from the recent decision by Judge Wisdom of the Fifth Circuit (Marble Products Co. of Georgia v. Local 155, United Stone and Allied Products Workers of America, AFL–CIO, 5 Cir., 1964, 335 F.2d 468) that "Congress and the Supreme Court have blessed the broad role of labor arbitration in maintaining industrial peace." We believe that arbitration of the dispute as provided in the agreement should be favored if we are doubtful about maintaining defendant's plea of estoppel.

Accordingly, we hold that the collective bargaining agreement between Lodge 37 and Higgins was automatically renewed by the failure of either party to give written notice to the other of intention to modify or terminate it, and we further hold that the parties must arbitrate the dispute as to the meaning of the contract and particularly the applicability of the proper wage scale per hour for machinists' work, all in accordance with the terms of the agreement.

Decree will be entered accordingly.