193 So.2d 78 (1966)
C. W. WILLIAMS, Plaintiff-Appellee-Appellant,
v.
ARKANSAS LOUISIANA GAS COMPANY et al., Defendants-Appellee-Appellant.
No. 10709.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1966.
*79 Blanchard, Walker, O'Quin & Roberts, Shreveport, for Arkansas Louisiana Gas Co., defendant-appellant.
Theus, Grisham, Davis, Leigh & Brown, Monroe, for plaintiff-appellee-appellant.
Jones, Blackwell, Chambliss & Hobbs, West Monroe, for Hugh L. Odom, defendant-appellee.
Before HARDY, AYRES, and BOLIN, JJ.
AYRES, Judge.
Plaintiff instituted this action for a declaratory judgment recognizing his ownership of a valid and subsisting oil, gas, and mineral lease covering a 1/8 interest in a *80 described 75-acre tract of land situated in Ouachita Parish. Plaintiff further prayed for an accounting from defendant Arkansas Louisiana Gas Company for his portion of minerals produced from a well on a unit including the property involved. In addition to his principal demand, plaintiff alternatively prayed for judgment against his lessor, Hugh L. Odom, for the recovery of the price paid for the lease.
From judgment in favor of plaintiff, recognizing him as the owner of the lease to the extent of the interest set forth and ordering defendant Arkansas Louisiana Gas Company to render an accounting of amounts due plaintiff from production had on the unitized property, Arkansas Louisiana Gas Company appealed. From further judgment rejecting plaintiff's alternative demands asserted against Odom, plaintiff appealed.
The primary issue for consideration is that of whether an after-acquired-title clause in an oil, gas, and mineral lease executed by a prior owner of the property precludes the validity of plaintiff's lease obtained from the prior owner's vendee of the property.
Defendant's denial of plaintiff's claim is based on the premises that: (1) the after-acquired-title clause in defendant's lease applied to plaintiff's lessor, Odom; and, plaintiff, at the time he acquired a lease from Odom, knew of the existence of a prior lease executed to defendant by Odom's vendor; and (2), if Odom was not personally bound by the after-acquired-title clause in defendant's lease, he ratified defendant's lease by the execution of a "Change of Depository" form prepared by Arkansas Louisiana Gas Company containing a clause reciting that:
"Except as changed hereby, the terms, conditions and stipulations of the aforesaid lease, and any amendment thereof, are hereby ratified, confirmed, and adopted."
The facts material to the issues presented for resolution may be briefly stated. W. L. Ethridge, Jr., on July 1, 1948, acquired an undivided 1/16 interest in the minerals of the land involved. James D. Sparks, on July 7, 1948, acquired a similar mineral interest. Mrs. Lela Smith Hale Stoker, owner of the land and of the remaining 7/8 interest in the minerals, on May 23, 1952, executed an oil, gas, and mineral lease covering her minerals to J. B. White, Sr., agent of the defendant Arkansas Louisiana Gas Company, for a primary term of 10 years. This lease, however, was, on June 12, 1952, assigned by White to his principal. Mrs. Stoker retained, in this lease, a royalty interest of 1/8 of 7/8 and was paid a bonus of $650.00. In a series of three transactions between July 13, 1955, and July 21, 1956, Mrs. Stoker transferred all her right, title, and interest in the property, surface and minerals, to Odom. Thereafter, Odom, having submitted proof of his ownership of the property, advised defendant of his desire for a change of the depository from a bank in Ruston to one in Monroe. A form for that purpose was executed August 15, 1955.
During the first seven days of 1958, Odom acquired, by 10 years' liberative prescription, the mineral interests formerly owned by Ethridge and Sparks. After protracted and unsuccessful negotiations with White, as agent for defendant Arkansas Louisiana Gas Company, during which Odom was offered a bonus of $1,000.00 for a lease covering his recently acquired 1/8 mineral interest, Odom executed an oil, gas, and mineral lease covering that interest to plaintiff herein for a bonus of $2,344.50.
On September 5, 1958, the 75-acre tract involved herein was placed in a drilling and spacing unit upon which the defendant Arkansas Louisiana Gas Company later completed a producing well. Since production was obtained defendant has operated a producing well and made proper royalty payments, maintaining in full force the leases covering the lands in the unit. Defendant, however, refused to recognize *81 plaintiff's leasehold interest and refused to make any production payments to him.
Plaintiff relies for support of his position primarily upon the holding in Calhoun v. Gulf Refining Company, 235 La. 494, 104 So.2d 547 (1958). The pertinent clause in defendant's lease recites:
"It is the intention of the parties that this lease shall also extend and apply to all outstanding mineral rights or servitudes affecting the land herein described as the same may revert to lessors, their heirs or assigns, from time to time."
We find no material difference between that clause and the one involved in the Calhoun case. There the lease recited:
"Lessor agrees that any additional or greater mineral interest in the leased premises that may be acquired by him by purchase or otherwise, is also included and leased herein, * * *."
In the Calhoun case Mrs. Mary C. Thigpen, a widow, owned, as of October 7, 1943, a 298-acre tract of land unencumbered by any mineral lease or servitude. On that date, she conveyed the land to W. C. Thompson, reserving unto herself an undivided ¾ of the minerals. In 1946, Thompson leased the entire tract to one of the predecessors in title of Gulf Refining Company without mention of the outstanding mineral interests except for a "reversionary" clause added to that lease. Thompson then sold the property to Mrs. Stella Calhoun in 1949. When the mineral servitude created in 1943 expired for nonuse on its anniversary date in 1953, it was contended by the defendant, Gulf Refining Company, that its 1946 lease then covered the entire mineral interests in the tract. Basing its argument upon the "reversionary" or after-acquired-title clause, the defendant claimed that Calhoun was bound by the agreement in the Thompson-Gulf Refining Company lease. It was held, however, that the after-acquired-title or "reversionary" clause was a personal agreement between Thompson, the lessor, and Gulf Refining Company, as lessee, and not binding upon Calhoun, Thompson's vendee of the property. Thus it was held that the mineral servitude, upon its expiration, reverted free of any encumbrance, to the then owner of the land. In so holding, the court made these observations which we think are appropriate here:
"This Court, in dealing with the ordinary oil and gas lease, has applied the articles of the Code applicable to leases, these being found principally under the headings `Of Lease' and `Of Conventional Obligations.' The lessee under a lease contract does not obtain a real right in the sense of absolute dominion, and a lease is not one of those real obligations which attach as a burden to the land, as does a servitude; in other words, a lease is not a jus in re, but a jus ad rem, a right upon the thing. Therefore, when Mrs. Calhoun acquired the land from Thompson, while the land was subject to the lease, that lease was limited to Thompson's ownership in the minerals, that is, one-fourth, and the other three-fourths interest remained outstanding. The clause in the Thompson lease dealing with the outstanding minerals merely evidenced a personal agreement between the original parties to the lease, was dependent on the happening of an uncertain event, and was limited to whatever additional ownership in the mineral rights Thompson might acquire while the lease was in full force and effect; the situation did not materialize; consequently, the clause fell when Thompson failed to acquire outstanding mineral interests, and those became vested in Mrs. Calhoun, the owner of the land, at the time the servitude was extinguished because of its nonuse for a period of more than ten years."
With reference to the second of its contentions, the defendant Arkansas Louisiana Gas Company's position is that Odom bound himself by the terms of its lease executed by Odom's vendor. This position is predicated upon the premises that Odom ratified the lease because (1) his deed of acquisition *82 made mention of it as an outstanding mineral lease, and (2) the language in the "Change of Depository" form was explicit in that respect.
With reference to the first of these contentions, it may be pointed out that Odom's deed did contain a recital to the effect there was an outstanding oil, gas, and mineral lease affecting the property as well as sales covering 10 mineral acres as evidenced by instruments duly recorded. Obviously, the purpose of this clause was to limit the vendor's liability in warranty. Nothing therein warrants a conclusion that Odom assumed his vendor's obligations under the after-acquired-title clause in defendant's lease.
In considering defendant's contention that, in the execution of the "Change of Depository" form, Odom ratified, confirmed, and adopted defendant's lease and assumed the lessor's obligations under the after-acquired-title clause, the following facts are found in the record: Ruston State Bank was initially designated as a depository for all rentals payable under the lease. After acquiring the property from Mrs. Stoker, Odom requested a change of the depository bank to one in Monroe. His only object and intention in executing the document, so he testified, was to effect a change in the depository bank; he had no intention of conveying any mineral rights to the defendant Arkansas Louisiana Gas Company which had, in the meantime, reverted to him.
Defendant, however, questions the admissibility of Odom's parol testimony with reference to his intent and purpose. The objection is without merit. Presented with a similar question in Arkansas Louisiana Gas Co. v. Thompson, 222 La. 868, 64 So.2d 202, 208-209 (1952), the Supreme Court made this observation:
"In the case of Achee v. Caillouet, 197 La. 313, 1 So.2d 530, it was contended that a mineral lease, for a primary term extending beyond the date when prescription would have accrued on a mineral servitude affecting the property, signed by both the landowner and the mineral owner, was a joint lease; and as such it constituted an acknowledgment on the part of the landowner, interrupting the prescription running in his favor. As in the case at bar, the defendants (mineral claimants) objected to the admission of parol evidence in connection with the lease, resting their case on the instrument itself. In disposing of this issue we pointed out this Court has, on numerous occasions, sanctioned the admission of parol evidence to ascertain the intention of a landowner under such circumstances; * * *." (Emphasis supplied.)
In the interpretation of agreements, legal effect must be given according to the true intent of the parties, and such intent is to be determined by the language of the contract when the words are clear, explicit, and lead to no absurd consequences. LSA-C.C. Art. 1945. However,
"When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms."
LSA-C.C. Art. 1950.
As was emphasized in Howk v. Sulphur Motor Company (La.App.) 155 So. 2d 272, 275 (3d Cir. 1963):
"* * * it is a well settled rule that in construing the terms of an agreement, the fact that informed and experienced persons do not customarily bind themselves to unjust and unreasonable obligations must be considered."
Thus, as stated by the trial court in the instant case, it is inconceivable that Odom, who had a valuable asset such as the 10 mineral acres in question, would have renounced it in favor of the defendant merely to have a change in the bank depository.
Moreover, in this regard, an observation of the Supreme Court in Achee *83 v. Caillouet, 197 La. 313, 1 So.2d 530, 536 (1941), relative to acknowledgments which would have the effect of extending valuable rights beyond normal prescriptive periods, appears particularly appropriate. There it was stated:
"It is utterly inconsistent and irreconcilable with the firmly established rule that a bare acknowledgment by the landowner of the existence of the mineral rights of another in his land does not interrupt the running of prescription in the sense that the prescription begins to run anew from the date of acknowledgment. To have that effect, the acknowledgment must be coupled with the purpose and intention that it shall have that effect, and such purpose and intention must be expressed in unmistakable terms."
See, also: Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50, 55 (1956); Arkansas Louisiana Gas Co. v. Thompson, supra.
It would be illogical to assume that Odom intended to execute a ratification where the instrument executed is styled "Change of Depository" and where its tenor is toward insuring that the contemplated change of depository is properly made. The defendant offered no proof in contradiction of Odom's testimony as to his intention in executing the change of depository.
Moreover, under the jurisprudence of this State, an alleged ratification must be strictly construed against him who relies thereon. Thus, the intention to ratify by a party, against whom an act is opposed, must be clearly and unequivocally shown. Celeste Sugar Co. v. Dunbar-Dukate Co., 160 La. 694, 107 So. 493 (1926); Wells v. Files, 136 La. 125, 66 So. 749 (1914); Sims v. Jeter, 129 La. 262, 55 So. 877 (1911); Breaux v. Sarvoie, 39 La.Ann. 243, 1 So. 614 (1887). No intention to ratify will be inferred when the act can be otherwise explained. Sims v. Jeter, supra. And, in case of doubt, the party against whom ratification or voluntary acquisition is claimed must have the benefit of the doubt. Succession of Easum, 49 La.Ann. 1345, 22 So. 364 (1897). See, also: Derouen's Estate v. General Motors Acceptance Corp., 245 La. 615, 159 So.2d 695 (1964); International Accountants Society v. Santana, 7 La.App. 594 [aff. 166 La. 671, 117 So. 768, 59 A.L.R. 276] (1928).
Defendant Arkansas Louisiana Gas Company makes a final contention that plaintiff is without right or interest to an accounting, for the alleged reason that two days after the filing of this action the primary term of his lease expired. Plaintiff's lessor, Odom, makes no such contention and has not in any respect assailed the validity of plaintiff's lease. It thus appears that defendant is without right or interest to complain in such a situation. If plaintiff were not the owner of the leasehold rights covering the interest claimed, his lessor would be such owner. As a stakeholder, defendant is without right to champion the claims of either.
Moreover, during the primary period of plaintiff's lease the property and interests covered were, by orders of the Commissioner of Conservation, unitized in a drilling and production unit. The prescribed well or wells were drilled and production had under defendant, as operator of the unit. Plaintiff paid delay rentals until the expiration of the primary term of his lease. Under the Commissioner's order, no well other than that placed in production by defendant could be drilled on the unit. Plaintiff's only right was to share in the production of the unit well.
For these reasons, the judgment appealed is affirmed at the cost of the defendant-appellant, Arkansas Louisiana Gas Company.
Affirmed.